[Civ. No. 65691. Second Dist., Div. Two. Mar. 8, 1983.]

Estate of FRANK A. CARPENTER, Deceased.
VERNON CARPENTER, as Administrator, etc.,
Petitioner and Respondent, v.
MARY J. CHANDLER et al., Claimants and Appellants.

COUNSEL

Simmons & Wright and Berkeley L. Simmons for Claimants and Appellants.

Heinzelman & Schoenherr and Jeffrey T. Schoenherr for Petitioner and Respondent.

OPINION

BEACH, J.—

ISSUE:

We consider here the question: "May a joint tenant of real property unilaterally convey his interest therein directly to himself alone and thereby terminate the joint tenancy?" Our holding is: "yes, he may do so"; and we affirm the trial court.

BACKGROUND:

Prior to his death, Frank Carpenter (decedent) and appellant Mary Chandler owned property as joint tenants. By a grant deed executed only by himself as grantor, decedent Carpenter conveyed his interest to himself as grantee stating in the deed that it was "made for the purpose of breaking the joint tenancy." After the death of Frank Carpenter, the administrator (CTA) of his estate, in-

cluded an undivided one-half interest in the subject real property as part of the inventory of decedent's estate and passing by his will.

The trial court found that the transfer by the joint tenant was valid, that it terminated the joint tenancy, and that the parties thereafter held the property as tenants in common. Decedent's undivided one-half interest passed under the terms of his will disposing of that undivided one-half interest, and the remainder undivided one-half interest belonged to appellant.

DISCUSSION:

■ It is well established and not in dispute here that one joint tenant may terminate the joint tenancy by conveying his interest to another. The particular specific question here is whether he may do so by a deed conveying the property to himself. There are two cases in California answering this specific question and each reaching an opposite result. *Clark* v. *Carter* (1968) 265 Cal.App.2d 291 [70 Cal.Rptr. 923], holds that a joint tenant may not so terminate the joint tenancy. A later case, *Riddle* v. *Harmon* (1980) 102 Cal.App.3d 524 [162 Cal.Rptr. 530, 7 A.L.R.4th 1261], holds to the contrary that a joint tenant may so unilaterally sever the joint tenancy. ■ We cannot say that the trial court erred in following the holding of *Riddle*.

The court in *Riddle* made a thoughtful review of the reasoning of *Clark*. As the *Riddle* court observed, *Clark* explained that if the grantor (the joint tenant seeking to breach the joint tenancy) had conveyed to a third party who then reconveyed to the grantor, such a two-step transfer would be recognized as valid. The court in *Riddle* observed it could find no real and useful purpose for the use of such a third party or "strawman." Neither can we. Although the ancient rituals of the common law of livery of seizin—e.g., handing one a peppercorn or a dirt clod to the new owner, may have served the purpose of evidencing to all who bore witness thereto the act of conveyance, that act is now substituted by the execution and recording of deeds. As indicated in *Riddle* the strawman is but one of many fictions, devices, ploys and circuitous ways by which lawyers have worked out, and courts have upheld, methods to evade the old legal notion that a person cannot be both a grantor and grantee in a transfer. The *Riddle* decision simply faces the issue straightforwardly and holds that if the termination may be accomplished in a circuitous manner, it may be done directly. The other circuitous steps add nothing to the quality or dignity of the act and do nothing to afford greater protection to others who may be affected thereby as, for example, the other joint tenants, than does a direct act.

Recognizing the strawman or the need for some other intermediary is but engaging in a fiction in order to pay homage to a tradition or ritual no longer needed for any purpose.

Appellant Mary Chandler's argument relative to what she did after decedent's death in acting as though she was the surviving joint tenant and sole owner is irrelevant to the issue of breaking the joint tenancy. Decedent Frank Carpenter's unilateral act may have other consequences. The one breaking the joint tenancy may be causing a breach of contract, or the would-be surviving joint tenant who in reliance on the originally created joint tenancy, may believe it to still exist, may have a claim for expenses incurred because of such belief. But the fact that such other consequences may flow does not in itself preclude the termination of the joint tenancy by one joint tenant. Appellant has not demonstrated how the consequences of terminating the joint tenancy, a result already permitted by law, would be any different with the use of a strawman.

Appellant Mary Chandler objects to the trial court's reliance on the *Riddle* rule. She claims that *Riddle* was decided after decedent's death and that if the administrator (CTA) had acted diligently and filed the inventory on time he would not have had the opportunity to include the undivided one-half interest as part of the decedent's estate because, she argues, the transfer by him would have been void under the *Clark* rule.

The argument misses the point. The result intended by the decedent, i.e., breaking of the joint tenancy, is legal. How it was accomplished makes no practical difference to the survivor. She would be in no different position if the decedent had secretly used a strawman. That too would have been unknown to her. Nonetheless, it would have had the same result as accomplished by the unilateral act, i.e., a breaking of the joint tenancy. But it would not have accomplished anything for appellant Mary Chandler as the joint tenant with whom decedent no longer wanted to be a joint tenant. In either event, she would still have the right to pursue whatever legal or equitable remedies were available to her if the resultant breaking of the joint tenancy had denied her something for which she paid or if it changed a status upon which she relied in exchange for valuable consideration. That point was not presented to the trial court nor is it in issue here.

The issue should not be phrased in terms of whether the act of decedent was a "transfer" within the meaning of Civil Code section 1039, which is irrelevant here. We can accept that as a practical and physical matter there was no "transfer." Nothing was handed or delivered or removed from one person to a different person. The issue is simply whether the bundle of rights and obligations which result and flow from one form of association or ownership of property with others known as a "joint tenancy" may be unilaterally changed where one of the joint tenants wants to change the form of ownership to a different form of ownership having different benefits, obligations and results.

The judgment is affirmed.

Roth, P. J., and Compton, J., concurred.