[No. H014073. Sixth Dist. Apr. 25, 1996.]

Estate of ANGELINA LAYTON, Deceased.
LINDA PULLIAM, as Executor, etc., Petitioner and Respondent, v.
JAMES L. LAYTON, Objector and Appellant.

[No. H014074. Sixth Dist. Apr. 25, 1996.]

Estate of ROY LAYTON, Deceased.
JAMES L. LAYTON, as Executor, etc., Petitioner and Appellant, v.
LINDA PULLIAM, Objector and Respondent.

## COUNSEL

James T. Wilkerson for Petitioner and Appellant and for Objector and Appellant.

Patricio A. Letelier for Petitioner and Respondent and Objector and Respondent.

## Opinion

**PREMO, Acting P. J.**—Roy and Angelina Layton married in 1944, separated in 1973, and divorced in 1983. The interlocutory and final judgments dissolving the marriage did not divide community property, but the interlocutory judgment reserved jurisdiction to do so. The couple held title to the community residence as joint tenants, and Angelina[1] continued to reside in the residence after judgment. Roy died testate in 1992; his will bequeathed his estate to one of the couple's two children, appellant James L. Layton. No probate was opened. Angelina died testate in 1994; her will bequeathed her estate to the couple's two children and four children from a prior marriage. Respondent Linda Pulliam, as executor of Angelina's estate, opened a probate. Thereafter, James, as executor of Roy's estate, opened a probate. In the respective probate cases, each executor filed a petition under Probate Code section 9860 seeking to establish ownership of the residence.[2] Linda claimed that the property belonged to Angelina's estate by virtue of joint tenancy survivorship and Roy's prior death. James claimed that one-half of the property belonged to Roy's estate by virtue of community property principles. The probate department of the superior court heard the petitions together and rendered an order granting Linda's petition and denying James's petition. James appeals, and we affirm the order.

### Discussion[3]

The essence of James's contention is simply stated: since the family law court reserved jurisdiction to divide the community property, the probate court may now do so—the probate court's error was a failure to recognize that the status-only dissolution judgment severed the joint tenancy.[4]

In general, a joint tenancy may be severed by (1) a unilateral conveyance of the interest to a third party or recordation of a writing (Civ.

---

[1]For convenience we refer to the persons involved herein by their given names. (*In re Marriage of Allen* (1992) 8 Cal.App.4th 1225, 1227, fn. 1 [10 Cal.Rptr.2d 916].)

[2]A personal representative may file a petition requesting an order where the decedent died (1) in possession of, or holding title to, real or personal property and some interest in the property is claimed to belong to another, or (2) having a claim to real or personal property, title to or possession of which is held by another. (Prob. Code, § 9860, subd. (a).)

[3]For convenience we refer to the trial court's family law department as the family law court and probate department as the probate court.

[4]James, however, did not directly frame his argument below in this manner.

The parties primarily disputed whether the family law reservation of jurisdiction was impermissibly indefinite. According to Linda, it was too open-ended and therefore ineffective; thus, the probate court had original jurisdiction over the residence and must recognize the operation of joint tenancy survivorship. According to James, it was definite enough because the parties could elect to invoke it at any time; thus, the family law court had original jurisdiction; so the probate court should treat the estates as if they had substituted themselves in the family law case and simply divide the residence as community property.

Code, § 683.2), (2) an express or implied agreement of the joint tenants (*Estate of Blair* (1988) 199 Cal.App.3d 161, 168-169 [244 Cal.Rptr. 627]), (3) a judgment (*Hammond* v. *McArthur* (1947) 30 Cal.2d 512, 515 [183 P.2d 1]), or (4) an execution sale (*ibid.*).

James relies on *In re Marriage of Hilke* (1992) 4 Cal.4th 215 [14 Cal.Rptr.2d 371, 841 P.2d 891] and *In re Marriage of Allen, supra,* 8 Cal.App.4th 1225. These cases, ironically, convince us against following James's path.

In *Hilke,* the parties married, acquired a community residence in joint tenancy, and obtained a status-only dissolution judgment which reserved jurisdiction over property issues. Before any property issues were adjudicated, Mrs. Hilke died. The administrator of her estate was then substituted as a party to the dissolution proceeding. In this posture the trial court divided the residence as community property. The Court of Appeal reversed, but the Supreme Court reversed the judgment of the Court of Appeal. The Supreme Court acknowledged the rule that "The death of one of the spouses abates a cause of action for dissolution, but does not deprive the court of its retained jurisdiction to determine collateral property rights if the court has previously rendered judgment dissolving the marriage." (*In re Marriage of Hilke, supra,*

---

As a secondary issue, Linda offered to submit testimony supporting that Roy and Angelina subjectively desired joint tenancy survivorship despite the divorce. But she agreed, upon the probate court's suggestion, that three declarations she had submitted would be sufficient for purposes of the hearing (these declarations are not part of the appellate record); James interposed that he disagreed with the substance of Linda's evidence, but agreed to submit the matter after the probate court indicated that it accepted that the parties disputed what was the subjective intent of Roy and Angelina.

Finding no authority supporting that a family law reservation of jurisdiction survived the death of both parties, the probate court held that the reservation did not survive. It then decided the case originally by (1) recognizing the effect of Family Code section 802 (ordinary presumption that property acquired in joint tenancy during marriage is community does not apply to property held at death where marriage dissolved more than four years before), and (2) accepting that the presumption arising from the joint tenancy form of title should determine the dispute.

On appeal, James apparently recognizes the flaw in his argument below, i.e., even assuming that the reservation of jurisdiction survived the deaths of Roy and Angelina, the evidence as to the intents of Roy and Angelina is conflicting and the operation of Family Code section 802, together with the presumption arising from the form of title, support the probate court's decision. He therefore argues what is implicit for him to prevail, i.e., that the status-only dissolution judgment terminated the joint tenancy.

"As a general rule issues not raised in the trial court cannot be raised for the first time on appeal." (*Bihun* v. *AT&T Information Systems, Inc.* (1993) 13 Cal.App.4th 976, 998 [16 Cal.Rptr.2d 787].) Appellate courts, however, have made exceptions to this rule where "the facts are not disputed and the issue merely raises a new question of law." (*Tyre* v. *Aetna Life Ins. Co.* (1960) 54 Cal.2d 399, 405 [6 Cal.Rptr. 13, 353 P.2d 725].) Here, the facts are not disputed and the new issue is simply one of law. We therefore apply the exception to the general rule and address James's contention.

4 Cal.4th at p. 220.) But it framed the issue at hand as follows: "The nub of this case is whether the community property presumption of [Civil Code] section 4800.1 [now Family Code section 2581[5]] applies to the residence owned by Mr. and Mrs. Hilke. If it does not, then the presumption arising from the form of title is that the spouses were joint tenants and Mr. Hilke consequently succeeds to the property by right of survivorship, absent a transmutation." (*Ibid.*) The court then held that the presumption applied because the trial court had dissolved the marriage before the wife's death and retained jurisdiction to determine property issues. (*Id.* at p. 221.)

*Hilke* therefore rested upon whether the rebuttable community property presumption (see *ante*, fn. 4) applied in the case, not whether a status-only dissolution judgment severs a joint tenancy. More importantly, however, the court's analysis militates against James's position. This follows because application of a rebuttable presumption necessarily opens the door to litigate whether one party can rebut the presumption; and in a *Hilke* situation there is no need to litigate whether the community property presumption will prevail or be overcome if the property at issue is already community by virtue of a severance by judgment. Stated another way, if a status-only dissolution judgment operated to sever a joint tenancy, the court in *Hilke* would have said so and decided the case on that basis rather than assume that a joint tenancy community property question arising in a *Hilke* situation must be resolved by litigating the presumption and rebuttal evidence.

*Allen* is a case involving facts, issues, and a result similar to *Hilke*. The case, however, also addresses severance of joint tenancy. In the context of rejecting the surviving husband's arguments that family law rules and presumptions should not apply, the court first opined that the husband had overlooked the effect of the status-only judgment together with the retention of jurisdiction proviso. It then added in a footnote: "He also overlooks the fact that even if this were true joint tenancy property, the court's orders affecting the property terminated the unities of interest essential to a joint tenancy." (*In re Marriage of Allen, supra,* 8 Cal.App.4th at p. 1231, fn. 6.)

The "orders" to which the *Allen* court referred was one reciting that the husband and wife had stipulated to a temporary order governing their rights

---

[5]Family Code section 2581 provides: "For the purpose of division of property on dissolution of marriage or legal separation of the parties, property acquired by the parties during marriage in joint form, including property held in tenancy in common, joint tenancy, or tenancy by the entirety, or as community property, is presumed to be community property. This presumption is a presumption affecting the burden of proof and may be rebutted by either of the following: [¶] (a) A clear statement in the deed or other documentary evidence of title by which the property is acquired that the property is separate property and not community property. [¶] (b) Proof that the parties have made a written agreement that the property is separate property."

to marital property, pending a court-ordered division. The stipulation and order specifically encompassed "real property held in joint tenancy 'subject to review in final equalization' or 'until further order of the court.'" (*In re Marriage of Allen, supra*, 8 Cal.App.4th at p. 1227.) The court added that its conclusion was consistent with *Estate of Seibert* (1990) 226 Cal.App.3d 338, 341 [276 Cal.Rptr. 508] ("The joint tenancy here was terminated by virtue of the agreement, reduced to court order, providing for sale and division of proceeds"), *Estate of Asvitt* (1979) 92 Cal.App.3d 348, 351 [154 Cal.Rptr. 713] ("A joint tenancy may be terminated either by mutual agreement between the parties or by any conduct or course of dealings sufficient to indicate that all parties have mutually treated the joint tenancy as terminated"), and *Wardlow* v. *Pozzi* (1959) 170 Cal.App.2d 208, 210 [338 P.2d 564] ("There can be no question but that a joint tenancy may be terminated by express agreement between the joint tenants and an agreement between the tenants which, although it does not expressly terminate the tenancy, is inconsistent by its terms with one or more of the four essential unities of a joint tenancy[6] will also be adjudged to be a severance thereof").

■  *Allen* is therefore more pointedly against James's position than is *Hilke*. Its reliance on the order (referring to joint tenancy property subject to "final equalization"), rather than the status-only judgment, illustrates that a court judgment or order, like an express or implied agreement, must declare or indicate an intent to terminate joint tenancy status before it can serve to sever a joint tenancy. By definition, a status-only dissolution judgment that merely reserves jurisdiction over property issues disclaims any intent to affect marital property.

James also relies upon language from cases like *Henn* v. *Henn* (1980) 26 Cal.3d 323 [161 Cal.Rptr. 502, 605 P.2d 10], that refer to unadjudicated marital property as property held in "tenancy in common." For example, *Henn* states: "'under settled principles of California community property law, "property which is not mentioned in the pleadings as community property is left unadjudicated by decree of divorce, and is subject to future litigation, the parties being tenants in common meanwhile."'  [Citations.]" (*Id.* at p. 330.)

*Henn*, however, was addressing an unadjudicated pension plan claimed to have been community property rather than separate property. What was at issue was the character of the unadjudicated marital property, i.e., who

---

[6]Civil Code section 683 abandons the four common law joint tenancy unities (time, title, interest, and possession). "The sole technical requisite is an express declaration of joint tenancy . . . ." (4 Witkin, Summary of Cal. Law (9th ed. 1987) Real Property, § 258, pp. 460-461.)

owned it—the community or a separate estate? In this context, it is imprecise to refer to unadjudicated community property as "community property" since the marriage is dissolved. By necessity, unadjudicated community property becomes property in common for ownership purposes.

Not at issue in *Henn* was the form of ownership, i.e., how do the owners hold title—community, joint, or common? It is an entirely different question whether unadjudicated marital property is held as community, joint, or in common. To apply the ownership language of *Henn* to title questions would effectively allow automatic severance of joint tenancy titles. (Cf. *In re Marriage of Hilke, supra,* 4 Cal.4th at p. 220 [rejecting that the filing of a dissolution proceeding can automatically convert joint tenancy property to community property].)[7]

So long as marital partners are permitted to hold their property in joint tenancy,[8] the question in what form the property is held must necessarily be answered by reference to the orthodox rules defining the forms of ownership and methods to alter a form of ownership.

We recognize that it may be illogical that divorcing parties, "awaiting the court's division of property acquired during marriage, would envision or desire the operation of [joint tenancy] survivorship. An untimely death results in a windfall to the surviving spouse, a result neither party presumably intends or anticipates." (*Estate of Blair, supra,* 199 Cal.App.3d at p. 169, fn. omitted.) But this is not invariably so. In this case, for instance, after passage of nearly a decade (from the dissolution judgment until Roy's death) neither Roy nor Angelina invoked the family court's reserved jurisdiction to declare the residence community property and divide it as such. Nor did either take measures to unilaterally sever the joint tenancy. These facts strongly suggest that Roy and Angelina envisioned or desired the operation

---

[7] *Allen* also cites *Henn* and other pension cases and offers that several features of them were "relevant to the determination at hand." (*In re Marriage of Allen, supra,* 8 Cal.App.4th at p. 1234.) Among the features singled out was: "the characterization of the ownership of an asset at the time of one party's death did not override the other party's existing community property rights because by operation of law the unadjudicated community asset had become an asset owned by both parties as tenants in common." (*Ibid.*)

*Allen* was referring to three pension cases—two of which involved wives claiming community interests in deceased husbands' pension plans and one of which involved a wife's estate claiming an interest in a husband's pension plan.

We pose that the feature was relevant to the *Allen* court because the court was countering the husband's argument that his wife's death precluded application of family law rules and presumptions (see *In re Marriage of Allen, supra,* 8 Cal.App.4th at pp. 1232-1234), not because of an unspoken, automatic rule that converts joint tenancy property to property in common.

[8] "A husband and wife may hold property as joint tenants or tenants in common, or as community property." (Fam. Code, § 750.)

of joint tenancy survivorship. Indeed, the probate court's order recites that, within a year following the status-only judgment, Roy filed a motion seeking sale of the property but never proceeded to trial. Thus, Roy was subjectively aware of the title question but chose not to litigate it. Although one could infer from the filing that Roy desired to sever the joint tenancy, one could also infer from the abandonment that Roy reconsidered and changed his mind.

In short, concerns about divorcing parties' expectations regarding joint tenancy survivorship fall more suitably within the domain of the Legislature. The current state of the law does not permit automatic severance of a joint tenancy, but requires, at the very least, specific words or conduct that can be construed as being inconsistent with holding title in joint tenancy. A status-only dissolution judgment does not manifest sufficient words or conduct to sever a joint tenancy.

## Disposition

The order after hearing granting Linda's petition and denying James's petition is affirmed.

Elia, J., and Wunderlich, J., concurred.