[No. E023094. Fourth Dist., Div. Two. Dec. 20, 1999.]

Estate of ROBERT STANLEY MITCHELL, Deceased.
SHIRLEY C. MITCHELL, Petitioner and Respondent, v.
CHARLES JEFFREY MITCHELL, as Special Administrator, etc.,
Objector and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part III.

**COUNSEL**

Marjorie G. Fuller and Phillip J. Holman for Objector and Appellant.

Hartnell, Horspool & Fox and Donald R. Ferguson for Petitioner and Respondent.

**OPINION**

**RICHLI, J.**—During their marriage, Robert and Shirley Mitchell acquired certain real property as joint tenants. The marriage soured, and a dissolution proceeding was filed. As a result, both an automatic temporary restraining order (Fam. Code, § 2040, subd. (a)) and a court-ordered preliminary injunction went into effect which prohibited both of them from "transferring,

encumbering, hypothecating, concealing, or in any way disposing of any property, real or personal, whether community, quasi-community, or separate . . . ." Thereafter, Robert purported to sever the joint tenancies unilaterally by recording declarations of severance. (Civ. Code, § 683.2, subd. (a)(2).) A little over a month later, while the dissolution proceeding was still pending, he died.

Charles Jeffrey Mitchell, Robert's son and the administrator of his estate, claims the severance was effective, and Robert's interest in the property therefore passed to the estate. Shirley claims the attempted severance was ineffective because it violated the preliminary injunction, and therefore Robert's interest in the property passed to her by right of survivorship.

We will hold that the severance of a joint tenancy by recording a declaration of severance is not a "transfer" or a "disposition" of "property." Accordingly, such a severance does not violate either the automatic temporary restraining order in a dissolution proceeding or a similarly worded court-ordered temporary restraining order or preliminary injunction.

I

FACTUAL AND PROCEDURAL BACKGROUND

A. *Background.*

Robert and Shirley were married in 1978. Between 1986 and 1990, they acquired four separate parcels of real property in Helendale. They took title to each of these properties as "Robert S. Mitchell and Shirley C. Mitchell, husband and wife as joint tenants." (Capitalization omitted.)

B. *The Dissolution Proceeding.*

On September 9, 1996, Shirley filed a petition for legal separation against Robert. Later, she filed an amended petition for dissolution of marriage.

The family law court issued a summons which, as required by Family Code section 2040, subdivision (a), included a temporary restraining order (the automatic TRO). The automatic TRO enjoined Robert from, among other things, "transferring, encumbering, hypothecating, concealing, or in any way disposing of any property, real or personal, whether community, quasi-community, or separate, without the written consent of the other party or an order of the court, except in the usual course of business or for the necessities of life."

The summons, as required by Family Code section 2040, subdivision (b), also included the following warning:

"WARNING: California law provides that, for purposes of division of property upon dissolution of marriage or legal separation, property acquired by the parties during marriage in joint form is presumed to be community property. If either party to this action should die before the jointly held community property is divided, the language of how title is held in the deed (i.e., joint tenancy, tenants in common, or community property) will be controlling and not the community property presumption. You should consult your attorney if you want the community property presumption to be written into the recorded title to the property."

On Shirley's ex parte application, the family law court issued an order to show cause (OSC) which included an additional temporary restraining order (additional TRO). (Fam. Code, § 2045.) Like the automatic TRO, the additional TRO enjoined Robert from, among other things, "transferring, encumbering, hypothecating, concealing, or in any way disposing of any property, real or personal, whether community, quasi-community, or separate, except in the usual course of business or for the necessities of life."

On September 11, 1996, Robert was personally served with the summons (including the automatic TRO and the warning) and the OSC (including the additional TRO).

On December 17, 1996, Robert filed a declaration in response to the OSC. In it, he consented to the issuance of a preliminary injunction containing the same property restraints as the additional TRO.

On December 18, 1996, after a hearing on the OSC, the family law court ordered: "All restraining orders previously granted shall remain in full force and effect." This was, in effect, a preliminary injunction (the preliminary injunction).

C. *Robert's Attempt to Sever the Joint Tenancies.*

On June 3, 1997, Robert executed and recorded a declaration of severance of joint tenancy as to each of the four properties. (See Civ. Code, § 683.2, subd. (a)(2).) Each declaration stated:

"I, Robert S. Mitchell, hereby grant to myself, Robert S. Mitchell, all my respective rights, title, and interest in and to the real property . . . ."

"The purpose of this declaration is to sever whatever joint tenancy may exist between myself and my spouse, Shirley C. Mitchell, with respect to the ownership of the above property pursuant to Civil Code § 682.2(2) [*sic*].

"This conveyance changes the manner in which title is held, grantors and grantees remain the same and continue to hold the same proportionate interest, R&T 11911[.]" (Capitalization omitted.)

### D. *Robert's Death and the Probate Proceeding.*

On July 17, 1997, while the dissolution proceeding was still pending, Robert died. Under his will, any interest his estate had in the four properties would go to Charles and other legatees rather than to Shirley.

On August 7, 1997, Charles filed the present probate proceeding. On October 27, 1997, Charles was appointed administrator of Robert's estate.

On January 29, 1998, Shirley filed a verified petition to determine title to the four properties. (See Prob. Code, § 9860 et seq.) She asserted that Robert's attempt to sever the joint tenancies was ineffective because it violated the preliminary injunction; as a result, the properties continued to be held in joint tenancy and, upon Robert's death, by right of survivorship, she became the sole owner. On March 18, 1998, Charles filed a response to the petition. He asserted the severance was effective because it was not a "transfer" of any "property" and it therefore did not violate any court order.

On July 6, 1998, the probate court held a hearing on the petition. It took judicial notice of the file in the dissolution proceeding.[1] The parties agreed there was no need to take any other evidence. After hearing argument, the probate court granted Shirley's petition. It ruled that the severance was void because it violated the preliminary injunction. Alternatively, it ruled that Shirley's application for an OSC, together with Robert's responsive declaration consenting to the property restraints of the additional TRO, constituted a written agreement not to sever the joint tenancy; thus, the severance also was void because it violated this agreement.

## II

### DISCUSSION

Charles contends the severance of the joint tenancies did not violate the injunctive orders. In support of this contention, he offers several alternative arguments, not all of them equally convincing. In the end, however, we agree with him that the severance was not a "transfer" of "property."

### A. *Statutory Background.*

We begin with some basic background principles.

---

[1] We therefore have also taken judicial notice of the file. (Evid. Code, §§ 452, subd. (d)(1), 459, subd. (a)(1).)

### 1. *Joint Tenancy.*

■ "A distinctive feature of joint tenancy, as opposed to other interests in land, is the right of survivorship. This means that when one joint tenant dies, the entire estate belongs automatically to the surviving joint tenant(s). [Citations.]" (*Grothe* v. *Cortlandt Corp.* (1992) 11 Cal.App.4th 1313, 1317 [15 Cal.Rptr.2d 38].) ■ The severance of a joint tenancy transforms it into a tenancy in common by extinguishing the right of survivorship. (*Tenhet* v. *Boswell* (1976) 18 Cal.3d 150, 155 [133 Cal.Rptr. 10, 554 P.2d 330]; *Re* v. *Re* (1995) 39 Cal.App.4th 91, 96 [46 Cal.Rptr.2d 62].)

A joint tenant may sever a joint tenancy in real property unilaterally by: (1) executing and delivering a deed to a third person, (2) executing a deed to him- or herself, (3) executing a written declaration of severance, or (4) executing any other written instrument evidencing an intent to sever. (Civ. Code, § 683.2, subd. (a).) In addition, with one exception not applicable here, the deed, declaration, or other written instrument must be recorded before the severing joint tenant dies. (Civ. Code, § 683.2, subd. (c).) Such an attempt to sever a joint tenancy is ineffective, however, if it is contrary to a written agreement of the joint tenants. (Civ. Code, § 683.2, subd. (b).)

### 2. *The Characterization of Property Acquired During Marriage as Joint Tenancy or Community Property.*

■ A husband and wife may co-own property as joint tenants, tenants in common, or community property. (Fam. Code, § 750.) Property cannot be held both as community property and in either a joint tenancy or a tenancy in common at the same time. (See *Tomaier* v. *Tomaier* (1944) 23 Cal.2d 754, 758 [146 P.2d 905] [joint tenancy]; see also Civ. Code, § 682.) Accordingly, each spouse's interest in a joint tenancy or a tenancy in common is his or her own separate property. (*Estate of Murray* (1982) 133 Cal.App.3d 601, 604, fn. 3 [183 Cal.Rptr. 924] [tenancy in common]; *Meyer* v. *Thomas* (1940) 37 Cal.App.2d 720, 723-724 [100 P.2d 360] [joint tenancy].)

"Before 1966, California courts applied a rebuttable presumption that ownership interest in property was as stated in the title. Thus, a residence purchased with community funds, but held by a husband and wife as joint tenants, was presumed to be separate property in which each spouse had a one-half interest." (*In re Marriage of Hilke* (1992) 4 Cal.4th 215, 219 [14 Cal.Rptr.2d 371, 841 P.2d 891].)

■ At all times relevant here, however, for purposes of the division of property in a dissolution proceeding, property acquired during marriage in

joint form, including joint tenancy or tenancy in common, is presumed to be community property. This presumption can be rebutted, but only by a writing meeting certain statutory requirements. (Fam. Code, § 2581; *In re Marriage of Hilke, supra,* 4 Cal.4th at p. 219; accord, former Civ. Code, § 4800.1, subd. (b), Stats. 1986, ch. 539, § 1, p. 1925; former Civ. Code, § 4800.1, Stats. 1983, ch. 342, § 1, p. 1538.)

If one spouse dies during a dissolution proceeding but before there is a judgment of dissolution, this community property presumption does not apply. Property held in joint tenancy will pass, by right of survivorship, to the surviving spouse. (*In re Marriage of Hilke, supra,* 4 Cal.4th at pp. 220-221; *Estate of Blair* (1988) 199 Cal.App.3d 161, 166-167 [244 Cal.Rptr. 627].) If, however, a spouse dies after there has been a judgment of dissolution but before there is a final judgment dividing the community property, the community property presumption *does* apply. Property held in joint tenancy will be divided equally between the surviving spouse and the estate of the deceased spouse. The surviving spouse will have no right of survivorship. (*In re Marriage of Hilke, supra,* 4 Cal.4th at p. 220; *In re Marriage of Allen* (1992) 8 Cal.App.4th 1225, 1226-1227, 1231-1235 [10 Cal.Rptr.2d 916].)

This presents what has been called "the '*Hilke/Allen/Blair*' conundrum . . . ." (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 1999) ¶ 8:51, p. 8-13 to 8-14 (rev. #1 1998).) Ordinarily, holding community property in joint tenancy form is mutually advantageous, during marriage as well as after dissolution. Once a dissolution proceeding is pending, however, "it is illogical that [the] parties . . . would envision or desire the operation of survivorship. An untimely death results in a windfall to the surviving spouse, a result neither party presumably intends or anticipates." (*Estate of Blair, supra,* 199 Cal.App.3d at p. 169, fn. omitted.) Continuing to hold property in joint tenancy in effect forces each spouse to make the "macabre gamble" that the other will die during the dissolution. (*Id.,* at p. 169, fn. 3.)

In 1994, the Legislature amended Family Code section 2040 so as to add a requirement that the summons must also contain a form warning about "the '*Hilke/Allen/Blair*' conundrum." (See Fam. Code, § 2040, subd. (b), Stats. 1994, ch. 1269, § 13.) The summons served on Robert in this case included this warning.

### 3. *Temporary Restraining Orders in Dissolution Proceedings.*

Since at least 1970, the trial court in a dissolution proceeding has been statutorily authorized to issue an ex parte temporary restraining order enjoining the parties from "transferring, encumbering, hypothecating, concealing,

or in any way disposing of any property, real or personal, whether community, quasi-community, or separate, except in the usual course of business or for the necessities of life . . . ." (Fam. Code, § 2045, subd. (a), Stats. 1993, ch. 219, § 106.7, pp. 1610-1611; former Fam. Code, § 2035, subd. (a), Stats. 1992, ch. 162, § 10, p. 513; former Civ. Code, § 4359, subd. (a), Stats. 1979, ch. 795, § 1, p. 2704; former Civ. Code, § 4359, Stats. 1970, ch. 311, § 1, p. 704.) This ex parte restraining order may remain in effect for not longer than 25 days. (Fam. Code, § 242.) Even if the ex parte restraining order has expired, however, the trial court may hold a hearing on the OSC and issue a similar preliminary injunction. (See Fam. Code, § 242, subd. (b).)

In 1989, the Legislature enacted what is now Family Code section 2040, subdivision (a)(2),[2] which requires the summons in a dissolution proceeding to include a temporary restraining order enjoining the parties from, among other things, "transferring, encumbering, hypothecating, concealing, or in any way disposing of any property, real or personal, whether community, quasi-community, or separate, without the written consent of the other party or an order of the court, except in the usual course of business or for the necessities of life . . . ." This " 'automatic' restraining order" (*Droeger* v. *Friedman, Sloan & Ross* (1991) 54 Cal.3d 26, 42 [283 Cal.Rptr. 584, 812 P.2d 931]) remains in effect "until the final judgment is entered or the petition is dismissed, or until further order of the court." (Fam. Code, § 233, subd. (a).) The summons served on Robert included this restraining order.

B. *Analysis.*

Charles's first argument is that the Legislature placed the provisions requiring the summons to include both the automatic temporary restraining order and the *Hilke/Blair/Allen* warning in the same statute, Family Code section 2040. He argues the Legislature did not intend that a spouse who severed a joint tenancy in response to the warning would be violating the automatic temporary restraining order: "It would be illogical to believe the Legislature, within one statute, would both encourage a specific behavior . . . and then prohibit that same behavior . . . ." We are not convinced.

The automatic temporary restraining order prohibits each spouse from transferring property "without the written consent of the other party or an

---

[2]The provisions of Family Code section 2040, subdivision (a)(2), were originally enacted as Code of Civil Procedure section 412.21, subdivision (a)(3). (Stats. 1989, ch. 1105, § 7, p. 3972.) They have been successively renumbered, without substantial change, as Code of Civil Procedure section 412.21, subdivision (a)(2) (Stats. 1990, ch. 935, § 3, p. 3995), Family Code section 2030, subdivision (b) (Stats. 1992, ch. 162, § 10, p. 512; Stats. 1992, ch. 163, § 20, p. 734), Family Code section 2040, subdivision (b) (Stats. 1993, ch. 219, § 106, p. 1607, § 106.7, pp. 1610-1611), and finally as Family Code section 2040, subdivision (a)(2). (Stats. 1994, ch. 1269, § 13.)

order of the court . . . ." (Fam. Code, § 2040, subd. (a)(2).) The warning then states: "You should consult your attorney if you want the community property presumption to be written into the recorded title to the property." (Fam. Code, § 2040, subd. (b).) It does not purport to dictate precisely what advice the attorney should give, nor precisely how the recorded title should be made to reflect the community property presumption. Certainly it does not state that this may be done without either the consent of the other spouse or an order of the court. The Legislature may well have contemplated that one spouse, after consulting an attorney, would conclude a severance was in his or her interest. However, it also may well have contemplated requiring the severing spouse to consult with—or at least to give notice to—the other spouse, so as to give him or her an opportunity to protect his or her own interests.

Thus, from the text of the statute alone, we cannot tell whether the Legislature did or did not intend to allow one spouse to sever a joint tenancy without violating the automatic temporary restraining order. Neither of the parties has called our attention to any legislative history that sheds any light on the issue. Accordingly, this argument is not dispositive.

Second, Charles argues a joint tenant has an absolute right to sever the joint tenancy, even when a dissolution proceeding is pending. He quotes *Estate of Propst* (1990) 50 Cal.3d 448 [268 Cal.Rptr. 114, 788 P.2d 628], in which the Supreme Court stated: "With respect to real property, California courts have consistently applied the common law principle that '[a]n indisputable right of each joint tenant is the power to convey his or her separate estate by way of gift or otherwise without the knowledge or consent of the other joint tenant and to thereby terminate the joint tenancy.' [Citations.]" (*Id.*, at p. 456, quoting *Riddle* v. *Harmon* (1980) 102 Cal.App.3d 524, 527 [162 Cal.Rptr. 530, 7 A.L.R.4th 1261].) An injunction, however, may preclude a party from doing what he or she would otherwise have a right to do.

Charles cites *Estate of Blair, supra,* 199 Cal.App.3d 161 for the proposition that a severance may be appropriate during a dissolution. *Blair* is the seminal case holding that, when one spouse dies during a dissolution proceeding but before entry of judgment, property held by the spouses as joint tenants passes, by right of survivorship, to the surviving spouse. (*Id.*, at pp. 166-167.) The court indicated that, on retrial, the estate of the deceased spouse could try to prove there had been a severance. (*Id.*, at p. 168.) It also observed that, in light of its decision: "The lawyer representing a party in a dissolution proceeding is now obligated to promptly partition all community property held in joint tenancy to avoid what occurred in this case." (*Id.*, at p. 169.) When *Blair* was decided, however, there was no statutory provision for

an automatic restraining order. *Blair* therefore cannot be read as permission to sever a joint tenancy once an automatic restraining order is in effect.

Charles also cites *Estate of Layton* (1996) 44 Cal.App.4th 1337 [52 Cal.Rptr.2d 251]. There, the husband and wife held a home in joint tenancy. The trial court entered an interlocutory judgment of dissolution in which it reserved jurisdiction to divide the community property. Later, without having divided the community property, it entered a final judgment. Nine years afterward, the husband died; eleven years afterward, the wife died. (*Id.*, at p. 1339.)

The appellate court held the dissolution judgment did not sever the joint tenancy. Thus, the property had passed to the wife by right of survivorship and, upon her death, to her estate.[3] (*Estate of Layton*, *supra*, 44 Cal.App.4th at pp. 1339-1342.) The court rejected the contention that this resulted in a windfall to the wife: "[A]fter passage of nearly a decade . . . neither Roy nor Angelina invoked the family court's reserved jurisdiction to declare the residence community property and divide it as such. *Nor did either take measures to unilaterally sever the joint tenancy.* These facts strongly suggest that Roy and Angelina envisioned or desired the operation of joint tenancy survivorship." (*Id.*, at pp. 1343-1344, italics added.)

Charles argues that *Layton* "confirmed the right of a joint tenant, pending divorce or adjudication of community property, to decide for himself or herself whether the continuance of joint tenancy survivorship in real property is appropriate." Perhaps; but, like *Blair*, *Layton* did not consider whether this would be true in the face of a restraining order. The underlying dissolution proceeding had been filed long before there was any statutory provision for automatic restraining orders. Moreover, the dissolution proceeding had long since been terminated by a final judgment; the court's point was that, *even after that*, neither spouse took any steps to sever the joint tenancy. Although these cases are not inconsistent with Charles's position, we cannot go so far as to say they support it.

▇ Third, Charles argues the severance of a joint tenancy—at least when effected by executing and recording a written declaration of severance—is not a "transfer" of "property." Here we believe he is on firmer ground.

▇ " '[T]ransfer' is not a word with a single meaning." (*In re Marriage of Barneson* (1999) 69 Cal.App.4th 583, 590 [81 Cal.Rptr.2d 726].) " 'Section 1039 of the Civil Code provides that, "Transfer is an act of the parties,

---

[3]The community property presumption did not apply because the wife died, holding title to the property, more than four years after the marriage had been dissolved. (*Estate of Layton*, *supra*, at p. 1339, fn. 4, citing Fam. Code, § 802.)

or of the law, by which the title to property is conveyed from one living person to another." [Citations.] In legal phraseology it is commonly used to denote the passing of title in property, usually realty, or an interest therein from one person to another. [Citations.] . . . [W]hile the word "transfer" as used in the Civil Code indicates the passing of title from one person to another, in its ordinary use it has a very general meaning, including the removal of a thing from one place or person to another, the changing of its control or possession or the conveyance of title to it.' " (*Commercial Discount Co.* v. *Cowen* (1941) 18 Cal.2d 610, 614 [116 P.2d 599].)

At one time, this court held a joint tenant could not sever a joint tenancy by a deed to him- or herself. (*Clark* v. *Carter* (1968) 265 Cal.App.2d 291, 294-296 [70 Cal.Rptr. 923].) We explained that ". . . under California law, a transfer of property presupposes participation by at least two parties [citation], namely, a grantor and a grantee. [Citation.] Both are essential to the efficacy of a deed, and they cannot be the same person. [Citation.]" (*Id.,* at p. 295.)

Other courts held a joint tenant *could* sever by means of a deed to him- or herself. (*Estate of Carpenter* (1983) 140 Cal.App.3d 709, 711-712 [189 Cal.Rptr. 651]; *Riddle* v. *Harmon, supra,* 102 Cal.App.3d 524, 526-531.) In *Carpenter,* the court acknowledged "that as a practical and physical matter there was no 'transfer.' Nothing was handed or delivered or removed from one person to a different person." (*Estate of Carpenter, supra,* at p. 712.) It reasoned, however, that the absence of fictitious transfers to and from a straw man did not prejudice the other joint tenant. (*Ibid.*)

This dispute was resolved in 1984 by the enactment of Civil Code section 683.2, which permits a joint tenant to effect a unilateral severance not only by a deed to him- or herself, but also by a declaration of severance. Courts on both sides of the issue had agreed that a deed by one joint tenant to him- or herself was not a "transfer." Now, however, it is clear that a severance can be accomplished without any "transfer."

■ Here, no right, title, or interest in the property moved from anyone to anyone else. There was no change with respect to its control or possession of the property. Before the severance, Robert and Shirley each owned an undivided half-interest; after the severance, they each owned an undivided half-interest. Upon a division of the community property, whether before or after the severance, the community property presumption would have applied; the value of the property would have been equally divided, and each spouse would have lost the right of survivorship.

Shirley argues that, if the dissolution proceeding had gone to trial, she might have been able to rebut the community property presumption so as to prove that the property was really held in joint tenancy. (See Fam. Code, § 2581.) In that event, however, at the request of either party, the family law court could still have divided the property as if it were community property (Fam. Code, § 2650); each spouse would still have lost the right of survivorship. Absent such a request, it would have confirmed each spouse's separate interest in the property. (See *In re Marriage of Braud* (1996) 45 Cal.App.4th 797, 810 [53 Cal.Rptr.2d 179].) If confirmed before the severance, this separate interest would include a right of survivorship,[4] but if confirmed after the severance, it would not. Thus, Shirley's argument depends on the premise that the extinction of the right of survivorship is a "transfer" of "property."

*Estate of Grigsby* (1982) 134 Cal.App.3d 611 [184 Cal.Rptr. 886] is authority to the contrary. There, the spouses owned homestead property in joint tenancy. The wife unilaterally severed the joint tenancy by deeding the property to a straw man who deeded it back to her. Days later, the wife died, leaving her interest in the property to her sister. (*Id.*, at p. 614.) At that time, under former Civil Code section 1242, a married person could not unilaterally " 'convey[] or encumber[]' " homestead property. (*Estate of Grigsby, supra*, at p. 616.) The husband claimed that, under this statute, the wife's attempt to sever the joint tenancy was ineffective, and he therefore took by right of survivorship. (*Id.*, at p. 614.)

The appellate court held the wife could unilaterally sever the joint tenancy. It acknowledged that " '[t]he policy and purpose of section 1242 of the Civil Code is to prevent the destruction or encumbrance of a homestead by either spouse acting alone . . . .' [Citation.]" (*Estate of Grigsby, supra*, 134 Cal.App.3d at pp. 616-617, quoting *Ainsworth v. Morrill* (1916) 31 Cal.App. 509, 510 [160 P. 1089].) It explained, however, that ". . . the termination of the joint tenancy merely changes the form of ownership and permits the cotenant to exercise his right to make a testamentary disposition of his property." (*Estate of Grigsby, supra*, at p. 618.) It concluded: "We hold that the decedent did not intend to and did not injure, destroy, terminate, or encumber the homestead by exchanging deeds with the straw man. *We hold that she did not intend to and did not 'transfer' her title to the property*, but

---

[4] Realistically, once the family law court entered a judgment confirming the property to the spouses in joint tenancy, Robert would have severed the joint tenancy in "a New York minute." Nevertheless, for the purpose of discussion, we assume there was at least theoretically a possibility that Shirley could have come out of the dissolution with her right of survivorship intact.

rather that she intended to and did convert a joint tenancy to a tenancy in common." (*Ibid.*, italics added.)[5]

One could argue (although Shirley does not) that, even if the severance was not a "transfer," it was a "disposition," because it "disposed" of the right of survivorship. Unlike a "transfer," a "disposition" does not necessarily imply the participation of a second party. We would be reluctant to suggest that one spouse may annihilate property—for example, may set fire to the other spouse's car—without violating the automatic temporary restraining order simply because there has been no "transfer." But here, even assuming there was a "disposition," the right of survivorship is not "property." Admittedly, it is one incident of a joint tenancy interest in property. By itself, however, it is a mere expectancy.

■ "The term expectancy describes the interest of a person who merely foresees that he might receive a future beneficence . . . . [T]he defining characteristic of an expectancy is that its holder has no *enforceable right* to his beneficence." (*In re Marriage of Brown* (1976) 15 Cal.3d 838, 844-845 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164].) By contrast, a contract right which has been earned or purchased for a consideration is property, even though its enjoyment may be contingent upon future events. (*Id.*, at pp. 846-847 and fn. 8; accord, *In re Marriage of Fonstein* (1976) 17 Cal.3d 738, 746 [131 Cal.Rptr. 873, 552 P.2d 1169].) Such a right "cannot be defeated or diminished without [the holder's] agreement and it is therefore a valuable property right." (*In re Marriage of Fonstein, supra*, at p. 746.)

■ The right of survivorship has been described as "a mere expectancy that arises 'only upon success in the ultimate gamble—survival—and then only if the unity of the estate has not theretofore been destroyed . . . by any . . . action which operates to sever the joint tenancy.' [Citation.]" (*Riddle* v. *Harmon, supra*, 102 Cal.App.3d at pp. 526-527, quoting *Tenhet* v. *Boswell, supra*, 18 Cal.3d at pp. 155-156.) In this context, a joint tenant's absolute right to sever the joint tenancy (absent an agreement or court order to the contrary) becomes significant. The fact that either spouse could defeat the other spouse's right of survivorship at will demonstrates it was at best only an expectancy. Here, aside from the injunctive orders, Shirley had no enforceable entitlement to the right of survivorship. Thus, she lost only the hope of a future benefit.

Probably the classic example of a "naked expectancy" is the prospective interest of a beneficiary under a will. (*Hoeft* v. *Supreme Lodge K. of H.*

---

[5]A federal court has similarly concluded that the severance of a joint tenancy was not a taxable "transfer." (*Sullivan's Estate* v. *Commissioner of Internal Rev.* (9th Cir. 1949) 175 F.2d 657, 659.)

(1896) 113 Cal. 91, 96 [45 P. 185]; see also Civ. Code, § 700.) Similarly, "[t]he interest of the beneficiary of a life insurance policy designated by an insured who has the right to change the beneficiary is not a vested right but a mere expectancy . . . ." (*Sieroty* v. *Silver* (1962) 58 Cal.2d 799, 802 [26 Cal.Rptr. 635, 376 P.2d 563], disapproved on other grounds in *Estate of Baglione* (1966) 65 Cal. 2d 192, 197 [53 Cal.Rptr. 139, 417 P.2d 683]; accord, *In re Marriage of Brown, supra,* 15 Cal.3d at p. 845, fn. 6; *In re Marriage of O'Connell* (1992) 8 Cal.App.4th 565, 577, 579 [10 Cal.Rptr.2d 334].)

Interestingly, the Legislature has required an automatic temporary restraining order to include an entirely separate provision which prohibits the parties from canceling or changing the beneficiaries of any insurance held for the benefit of the parties or their children. (Fam. Code, § 2040, subd. (a)(3).) Thus, it seems clear that the Legislature did not believe the provision prohibiting a transfer or disposition of "property," standing alone, applied to such an expectancy. (See *Minnesota Mut. Life Ins. Co.* v. *Ensley* (9th Cir. 1999) 174 F.3d 977, 986 [husband's change of beneficiary on insurance policy from his wife to his brother did not violate injunction against " 'transferring, encumbering, concealing, selling, or otherwise disposing of' " community property].)

Severing a joint tenancy is closely analogous to both of these classic expectancies. Much like changing the legatee under a will or the beneficiary under an insurance policy, the effect of a severance is to change who is to receive property upon the contingency of death. We conclude a severance, too, affects only an expectancy.

Our conclusion finds some support in *In re Marriage of Hilke, supra,* 4 Cal.4th 215. There, the wife died after a judgment of dissolution but before a final judgment adjudicating any property issues. (*Id.,* at p. 218.) The Supreme Court held that, under these circumstances, the community property presumption applied, so that the husband had no right of survivorship. (*Id.,* at pp. 220-221.) The husband, however, argued the community property presumption could not be applied retroactively to joint tenancy property acquired before the presumption was enacted so as to eliminate his right of survivorship. (*Id.,* at p. 222.)

The Supreme Court noted that this turned on whether the presumption "impairs a vested property right." (*In re Marriage of Hilke, supra,* 4 Cal.4th at p. 222.) It then held: "[A] vested property right is one that is not subject to a condition precedent. [Citations.] Mr. Hilke's . . . survivorship interest in the marital residence is plainly subject to the condition precedent that he

survive Mrs. Hilke. . . . . [S]everance of a joint tenancy—by eliminating the survivorship characteristic of the joint tenancy form of ownership—theoretically affects the expectancy interest of the other joint tenant, but does not involve a diminution of his or her present vested interest. Put another way, a joint tenant has no vested interest in being the surviving tenant. The community property presumption of [Civil Code] section 4800.1 therefore may be applied retroactively in the circumstances of this case." (*Ibid.*)

We recognize that a "vested interest" as used in *Hilke* is not precisely the same thing as "property" as used in the injunctive orders. An interest may be "property" even though it is not "vested"—i.e., even though it is still subject to a condition precedent. (*In re Marriage of Brown, supra*, 15 Cal.3d at pp. 846-847 and 846, fn. 8.) Nevertheless, we find it telling that the Supreme Court referred to the right of survivorship as an "expectancy."

Our conclusion also finds support in cases from other jurisdictions, particularly *Lonergan v. Strom* (1985) 145 Ariz. 195 [700 P.2d 893]. There, the spouses held their home in joint tenancy. (*Id.*, at pp. 197-198 [700 P.2d at pp. 895-896].) When the husband filed for an annulment, the trial court issued a preliminary injunction, required by statute, enjoining both parties not to " 'transfer, encumber, conceal, sell, or otherwise dispose of any of the joint, common or community property of the parties except in the usual course of business or for the necessities of life, without the written consent of both parties or the permission of the court.' " (*Id.*, at p. 197 [700 P.2d at p. 895].) Thereafter, the husband unilaterally severed the joint tenancy by deeding the property to a straw man who deeded it back to him. Later, the husband died. (*Id.*, at p. 198 [700 P.2d at p. 896].)

The appellate court held that, because of the deed to the straw man, the severance did "technically" violate the injunction. (*Lonergan v. Strom, supra*, 145 Ariz. at pp. 198, 200 [700 P.2d at pp. 895, 898].) Nevertheless, it held the severance was not void. It rejected the wife's contention that the purpose of the injunction was to preserve the status quo. (*Id.*, at p. 198 [700 P.2d at p. 896].) Rather, the purpose of the injunction was "to forbid actions by either of the parties that would injure or dissipate the property of the marital estate and to forbid actions that would place the property beyond the power of the court thus preventing the court from allocating the property in its final decree. The transaction before us merely changed the form in which the parties held title to the marital property and did not remove the property from the marital estate or change its form so that it might be more easily secreted." (*Id.*, at p. 199 [700 P.2d at p. 897]; see also *In re Knickerbocker* (Utah 1996) 912 P.2d 969, 976-977, 982 [wife's unilateral severance of joint tenancy during divorce action did not violate order which prohibited " 'selling, encumbering or mortgaging' " the assets of the parties].)

We conclude that, when one spouse severs a joint tenancy with the other spouse by executing and recording a declaration of severance, there is neither a "transfer" nor a "disposition" of any "property." Such a severance therefore does not violate an injunctive order entered pursuant to either Family Code section 2040, subdivision (a), or Family Code section 2045.

In this case, the trial court erred by ruling that the severance violated the preliminary injunction. However, it also ruled that Shirley's application for the OSC, when combined with Robert's response, in which he consented to the property restraint provisions of the additional TRO, constituted an agreement not to sever the joint tenancy. It concluded the severance was contrary to this agreement and therefore ineffective under Civil Code section 683.2, subdivision (b). This ruling necessarily assumed that the severance did in fact violate the terms of the additional TRO and the preliminary injunction; thus, it is likewise erroneous.

III*

ATTORNEY'S FEES ON APPEAL

. . . . . . . . . . . . . . . . . . . . . . . . . . .

IV

DISPOSITION

The order appealed from is reversed. The matter is remanded with directions to adjudicate Shirley's petition in conformity with this opinion. Each party shall bear his or her own costs.

Hollenhorst, Acting P. J., and Ward, J., concurred.

Respondent's petition for review by the Supreme Court was denied April 19, 2000.

---

*See footnote, *ante*, page 1378.