Filed 6/14/19

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| DAVID RANEY, as Trustee, etc. and as Executor, etc.,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LAWRENCE CERKUEIRA,<br><br>    Defendant and Appellant. | A152549<br><br>(Alameda County<br>Super. Ct. No. RG15768187) |

Civil Code section 683.2, subdivision (c), provides that a written instrument severing a joint tenancy is not effective to eliminate the other tenant's right of survivorship unless it is recorded before the death of the severing tenant (with one exception not relevant here). Family Code section 2040, subdivision (b)(3) (hereafter, section 2040(b)(3))[1] provides that the standard automatic temporary restraining order binding parties in a pending dissolution proceeding (see § 2040, subd. (a)) does not restrain one party's "[e]limination of a right of survivorship to property, provided that notice of the change is filed and served on the other party before the change takes effect." In the published portion of this opinion, we conclude that a party who is bound by the automatic temporary restraining order must satisfy both the generally-applicable Civil Code requirements and section 2040(b)(3)'s notice requirement before the severance of a joint tenancy with the other party is effective to eliminate the right of survivorship.

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I, II, and IV.

[1] All undesignated section references are to the Family Code.

However, these requirements may be satisfied in any order.  Therefore, if a party records a joint tenancy severance in compliance with Civil Code section 683.2, subdivision (c), before providing the notice required by section 2040(b)(3), the elimination of the right of survivorship takes effect when notice of the severance is filed and served on the other party.

BACKGROUND

During their marriage, Veronica Cerkueira and appellant Lawrence Cerkueira[2] held certain real property (the Property) as joint tenants.  Veronica moved out of the Property in 2003 and Lawrence remained in possession.

In December 2014, Veronica filed a petition for dissolution of their marriage (the Dissolution Action).  Later the same month, Lawrence was personally served with the petition and summons.  The summons issued by the superior court included a standard family law automatic restraining order, pursuant to section 2040.  The automatic restraining order prohibited the parties from "transferring . . . any property, real or personal, whether community, quasi-community, or separate, without the written consent of the other party or an order of the court," with certain narrow exceptions.  (See § 2040, subd. (a)(2).)  The automatic restraining order further provided the parties were prohibited from "creating a nonprobate transfer or modifying a nonprobate transfer in a manner that affects the disposition of property subject to the transfer, without the written consent of the other party or an order of the court.  Before revocation of a nonprobate transfer can take effect or a right of survivorship to property can be eliminated, notice of the change must be filed and served on the other party."  (See § 2040, subds. (a)(4), (b)(2)–(3).)  The summons provided that the automatic restraining order remained in effect until judgment, dismissal, or further order of the court.  (See § 233, subd. (a).)

In January 2015, Veronica created the Veronica A. Cerkueira Family Trust (the Trust), and named her son, David Raney, as the trustee.  Veronica was the sole

---

[2] For convenience, we refer to Veronica and Lawrence by their first names.  No disrespect is intended.

2

beneficiary of the Trust until her death, when Raney would become the sole beneficiary. Veronica also executed a will naming Raney as executor and designating Raney, in his capacity as trustee of the Trust, as the sole beneficiary of her estate.

Also in January 2015, Veronica executed a document entitled "Transfer Grant Deed" (the Deed). The Deed stated Veronica "hereby severs the existing joint tenancy [in the Property] pursuant to CA Civil Code §683.2, reserving to [Veronica] a 50% tenant in common interest; the remaining 50% tenant in common interest shall remain belonging to [Lawrence]." The Deed also transferred Veronica's 50 percent tenant in common interest to Raney, as trustee of the Trust. The Deed was recorded on February 5, 2015. There is no evidence in the record that Lawrence had notice of the Deed before its recordation.

In March 2015, Veronica's attorney in the Dissolution Action emailed Lawrence's attorney in the Dissolution Action, stating: "On February 5th, Mrs. Cerkueira attempted to transfer her one-half of [the Property] to her revocable trust – thereby terminating the parties['] joint tenancy ownership."

In April 2015, Raney, acting in his capacity as trustee of the Trust, filed the underlying complaint for partition (the Partition Complaint) requesting the Property be partitioned by sale. The Deed was attached as an exhibit to the Partition Complaint. On May 2, Lawrence was personally served with the Partition Complaint. In June, Lawrence filed an answer asserting, as an affirmative defense, that Veronica "is subject to and in violation of the Standard Family Law Restraining Order." At a September hearing in the Dissolution Action, the parties and the court acknowledged the joint tenancy severance and discussed whether the Dissolution Action and the partition case should be related.

In November 2015, Veronica died. In March 2016, the Dissolution Action was dismissed for lack of jurisdiction because the court had not terminated marital status at the time of Veronica's death. Also in March, Veronica's will was accepted into probate and Raney was appointed personal representative of her estate. Subsequently, in the instant partition action, Raney filed a motion to amend the Partition Complaint to add

3

himself, in his capacity as personal representative of Veronica's estate, as a plaintiff. The court granted the motion.

A trial on partition was held and the court issued a statement of decision. The statement of decision found that Veronica's severance of the joint tenancy substantially complied with the automatic restraining order's provision that notice be provided before a right to survivorship is eliminated. However, the court found that Veronica's transfer of her interest in the Property to the Trust violated the automatic restraining order's prohibition on transferring property. The court cancelled the transfer and reformed the Deed to one severing the joint tenancy only. The statement of decision concluded that Raney, in his capacity as personal representative of Veronica's estate, is the owner of an undivided one-half interest in the Property and is entitled to an order of partition by sale.

The court issued an interlocutory judgment of partition ordering partition by sale. This appeal followed. (Code Civ. Proc., § 904.1, subd. (a)(9) ["an interlocutory judgment in an action for partition determining the rights and interests of the respective parties and directing partition to be made" is appealable].)

DISCUSSION

I. *Record on Appeal*

Raney filed a cross-appeal from the partition judgment. Both Raney and Lawrence included the reporter's transcripts in their notices designating the record on appeal. In February 2018, the reporter's transcripts were delivered to this court. The day before, Lawrence filed in the superior court an amended notice designating the record, electing to proceed without a record of oral proceedings. In June, Lawrence filed his opening brief. In October, Raney requested, and received, dismissal of his cross-appeal.

Raney now argues the reporter's transcripts are not part of the record on appeal because Lawrence did not include them in his amended notice designating the record. Raney is mistaken. As an initial matter, Lawrence's amended notice was filed more than four months after his notice of appeal. California Rules of Court rule 8.121(a)[3] requires

---

[3] All further rule references are to the California Rules of Court.

4

the notice designating the record on appeal be filed within 10 days after filing the notice of appeal. We see no basis to find that an amended notice filed more than four months later is effective to change the record on appeal. (Cf. rule 8.155(a)(1) [authorizing augmentation of the record "[a]t any time"].)

Even if the amended notice was effective, only one record on appeal needs to be prepared for multiple appeals taken from the same judgment. (Rule 8.147(a)(1) ["If more than one appeal is taken from the same judgment or a related order, only one record need be prepared, which must be filed within the time allowed for filing the record in the latest appeal."].) Raney designated the reporter's transcripts as part of the record on his cross-appeal and they were subsequently delivered to this court, completing the record. (Rule 8.149(b)(2).) The transcripts thereby became part of the record on any appeal from the interlocutory partition judgment, including Lawrence's appeal. (See *Krug v. Maschmeier* (2009) 172 Cal.App.4th 796, 799, fn. 1 ["Under . . . rule 8.147(a)(1), [the record on the merits appeal] was applicable to both appeals [the merits appeal and an appeal from a subsequent attorney fee order]."].) That Raney later dismissed his cross-appeal—after the record was complete and after Lawrence filed his opening brief—does not remove the transcripts from the record on appeal.

## II. *Jurisdiction*

Lawrence argues the trial court lacked jurisdiction over the partition action following Veronica's death. As we understand it, Lawrence's argument is that the Property is community property and, following Veronica's death, no court had jurisdiction to divide their community property. As we will explain, Lawrence's characterization of the Property as community property is incorrect. We therefore need not decide the scope of a superior court's jurisdiction over community property following the death of a spouse.

"A husband and wife may co-own property as joint tenants, tenants in common, or community property. ([Former] § 750.) Property cannot be held both as community property and in either a joint tenancy or a tenancy in common at the same time. [Citations.] Accordingly, each spouse's interest in a joint tenancy or a tenancy in

5

common is his or her own separate property." (*Estate of Mitchell* (1999) 76 Cal.App.4th 1378, 1385.) Following dissolution, there is a rebuttable presumption that property acquired during marriage in joint form is community property. (*Id.* at pp. 1385–1386.) However, "[i]f one spouse dies during a dissolution proceeding but before there is a judgment of dissolution, this community property presumption does not apply." (*Id.* at p. 1386.)

Because Veronica died before dissolution, no community property presumption applies to the Property. If, as Lawrence contends, Veronica's severance of the joint tenancy was ineffective, the Property was held in joint tenancy and passed to Lawrence upon her death by right of survivorship. If the severance was effective, as Raney contends, Lawrence and Veronica were tenants in common and Veronica's 50 percent interest in the Property was her separate property, becoming part of her estate conveyed by her will after her death. (See *Estate of England* (1991) 233 Cal.App.3d 1, 4, fn. 2 ["In a tenancy in common, each tenant has a separate but undivided interest in the property which can be conveyed by deed or will."]; Prob. Code, § 6101 ["A will may dispose of the following property: [¶] (a) The testator's separate property."].) In either event, the Property was not and is not community property. Accordingly, the scope of the superior court's jurisdiction over community property following Veronica's death is not relevant to this proceeding.[4]

---

[4] Lawrence also argues that Raney, in his capacity as personal representative of Veronica's estate, lacks standing to seek partition. The argument is not presented under a separate heading and is therefore forfeited. (*Consolidated Irrigation Dist. v. City of Selma* (2012) 204 Cal.App.4th 187, 201 [appellant "forfeited the argument by violating the rule that requires each point be presented in an appellate brief under a separate heading"].) Even if it were not forfeited, we would reject it. The Probate Code authorizes a personal representative to bring a civil partition action with respect to the decedent's property. (Prob. Code, § 9823, subd. (b) ["The personal representative may bring an action against the other cotenants for partition of any property in which the decedent left an undivided interest."]; Ross & Cohen, Cal. Practice Guide: Probate (The Rutter Group 2018) ¶ 14:231, italics omitted ["The action contemplated by Prob.C. § 9823 is a civil proceeding for partition pursuant to the applicable requirements in the Code of Civil Procedure."].)

6

III. *Family Code Section 2040*

The heart of the parties' dispute is whether Veronica, in severing the joint tenancy, violated the automatic restraining order's provision that "[b]efore . . . a right of survivorship to property can be eliminated, notice of the change must be filed and served on the other party." This order issued pursuant to section 2040(b)(3), which provides that "[n]othing in this section [requiring the summons in a dissolution proceeding contain a standard automatic temporary restraining order] restrains" certain transactions, including "[e]limination of a right of survivorship to property, provided that notice of the change is filed and served on the other party before the change takes effect."[5]

---

[5] Section 2040 provides, in its entirety:

"(a) In addition to the contents required by Section 412.20 of the Code of Civil Procedure, the summons shall contain a temporary restraining order: [¶] (1) Restraining both parties from removing the minor child or children of the parties, if any, from the state, or from applying for a new or replacement passport for the minor child or children, without the prior written consent of the other party or an order of the court. [¶] (2) Restraining both parties from transferring, encumbering, hypothecating, concealing, or in any way disposing of any property, real or personal, whether community, quasi-community, or separate, without the written consent of the other party or an order of the court, except in the usual course of business or for the necessities of life, and requiring each party to notify the other party of any proposed extraordinary expenditures at least five business days before incurring those expenditures and to account to the court for all extraordinary expenditures made after service of the summons on that party. [¶] Notwithstanding the foregoing, nothing in the restraining order shall preclude a party from using community property, quasi-community property, or the party's own separate property to pay reasonable attorney's fees and costs in order to retain legal counsel in the proceeding. A party who uses community property or quasi-community property to pay his or her attorney's retainer for fees and costs under this provision shall account to the community for the use of the property. A party who uses other property that is subsequently determined to be the separate property of the other party to pay his or her attorney's retainer for fees and costs under this provision shall account to the other party for the use of the property. [¶] (3) Restraining both parties from cashing, borrowing against, canceling, transferring, disposing of, or changing the beneficiaries of any insurance or other coverage, including life, health, automobile, and disability, held for the benefit of the parties and their child or children for whom support may be ordered. [¶] (4) Restraining both parties from creating a nonprobate transfer or modifying a nonprobate transfer in a manner that affects the disposition of property subject to the transfer, without the written consent of the other party or an order of the court.

7

Lawrence argues the automatic restraining order and section 2040(b)(3) provide that notice of a joint tenancy severance must be filed and served before the severance is recorded. Under the generally-applicable Civil Code provision, a joint tenancy severance is not effective to eliminate a right of survivorship unless it is recorded before the death of the severing joint tenant (with one exception not relevant here). (Civ. Code, § 683.2, subd. (c).) Lawrence contends that if a joint tenancy severance is recorded before notice is provided, the severance is void.

---

"(b) Nothing in this section restrains any of the following: [¶] (1) Creation, modification, or revocation of a will. [¶] (2) Revocation of a nonprobate transfer, including a revocable trust, pursuant to the instrument, provided that notice of the change is filed and served on the other party before the change takes effect. [¶] (3) Elimination of a right of survivorship to property, provided that notice of the change is filed and served on the other party before the change takes effect. [¶] (4) Creation of an unfunded revocable or irrevocable trust. [¶] (5) Execution and filing of a disclaimer pursuant to Part 8 (commencing with Section 260) of Division 2 of the Probate Code.

"(c) In all actions filed on and after January 1, 1995, the summons shall contain the following notice: [¶] 'WARNING: California law provides that, for purposes of division of property upon dissolution of marriage or legal separation, property acquired by the parties during marriage in joint form is presumed to be community property. If either party to this action should die before the jointly held community property is divided, the language of how title is held in the deed (i.e., joint tenancy, tenants in common, or community property) will be controlling and not the community property presumption. You should consult your attorney if you want the community property presumption to be written into the recorded title to the property.'

"(d) For the purposes of this section: [¶] (1) 'Nonprobate transfer' means an instrument, other than a will, that makes a transfer of property on death, including a revocable trust, pay on death account in a financial institution, Totten trust, transfer on death registration of personal property, revocable transfer on death deed, or other instrument of a type described in Section 5000 of the Probate Code. [¶] (2) 'Nonprobate transfer' does not include a provision for the transfer of property on death in an insurance policy or other coverage held for the benefit of the parties and their child or children for whom support may be ordered, to the extent that the provision is subject to paragraph (3) of subdivision (a).

"(e) The restraining order included in the summons shall include descriptions of the notices required by paragraphs (2) and (3) of subdivision (b)."

8

Raney argues that the automatic restraining order and section 2040(b)(3) impose an additional requirement—on top of the recordation required by the Civil Code—necessary to render a joint tenancy severance effective to eliminate a right of survivorship. According to Raney, the restraining order and section 2040(b)(3) allow these requirements to be completed in any order. Thus, if a joint tenancy severance is first recorded and then notice is filed and served, the severance is effective to eliminate the right of survivorship as of the date of filing and service.

The plain language of the restraining order and section 2040(b)(3) are ambiguous on this issue. Accordingly, we consider the legislative history and purpose of the notice provision in section 2040(b)(3). (*Tuolumne Jobs & Small Business Alliance v. Superior Court* (2014) 59 Cal.4th 1029, 1040 (*Tuolumne Jobs*) ["To the extent statutory language is ambiguous or open to more than one reasonable interpretation, we may turn to legislative history for guidance."].) As we will explain, we conclude that Raney's construction of the automatic restraining order and statute best serves the underlying purpose of the statute.

A. *Legal Background*

We begin with necessary background on joint tenancies and family law automatic temporary restraining orders.

1. *Joint Tenancies*

" 'A distinctive feature of joint tenancy, as opposed to other interests in land, is the right of survivorship. This means that when one joint tenant dies, the entire estate belongs automatically to the surviving joint tenant(s). [Citations.]' [Citation.] The severance of a joint tenancy transforms it into a tenancy in common by extinguishing the right of survivorship." (*Estate of Mitchell* (1999) 76 Cal.App.4th 1378, 1385.)

Civil Code section 683.2 provides "a joint tenant may sever a joint tenancy in real property as to the joint tenant's interest without the joinder or consent of the other joint tenants by," among other means, "[e]xecution of a written instrument that evidences the intent to sever the joint tenancy, . . . or of a written declaration that, as to the interest of

9

the joint tenant, the joint tenancy is severed." (Civ. Code, § 683.2, subd. (a)(2).)[6] The statute further provides that such a severance "is not effective to terminate the right of survivorship of the other joint tenants as to the severing joint tenant's interest unless one of the following requirements is satisfied: [¶] (1) Before the death of the severing joint tenant, the deed, written declaration, or other written instrument effecting the severance is recorded in the county where the real property is located. [¶] (2) The deed, written declaration, or other written instrument effecting the severance is executed and acknowledged before a notary public by the severing joint tenant not earlier than three days before the death of that joint tenant and is recorded in the county where the real property is located not later than seven days after the death of the severing joint tenant." (*Id.,* subd. (c).)[7] "The purpose of [Civil Code] section 683.2, subdivision (c), is to avoid potentially fraudulent behavior by the party who executes a document severing the joint tenancy," because absent the recordation requirement, the joint tenant could " 'execute an undisclosed severance, deposit the severing instrument with a third person, and instruct the third person to produce the instrument if the severing joint tenant dies first so the severed half may pass to his or her heirs or devisees,' " but could also, if the other joint tenant dies first, " 'suppress[] the severing instrument' " and " 'take the other half of the property by survivorship . . . .' " (*Estate of England* (1991) 233 Cal.App.3d 1, 6.)

Spouses "may co-own property as joint tenants, tenants in common, or community property. (§ 750.) Property cannot be held both as community property and in either a joint tenancy or a tenancy in common at the same time. [Citations.] Accordingly, each spouse's interest in a joint tenancy or a tenancy in common is his or her own separate property." (*Estate of Mitchell, supra,* 76 Cal.App.4th at p. 1385.)

"[F]or purposes of the division of property in a dissolution proceeding, property acquired during marriage in joint form, including joint tenancy or tenancy in common, is

---

[6] However, a joint tenancy cannot be unilaterally so severed "contrary to a written agreement of the joint tenants . . . ." (Civ. Code, § 683.2, subd. (b).)

[7] The parties' arguments about the effective date of transfer grants are not relevant to the issue before us.

presumed to be community property." (*Estate of Mitchell, supra,* 76 Cal.App.4th at pp. 1385–1386.) "If . . . a spouse dies after there has been a judgment of dissolution but before there is a final judgment dividing the community property, the community property presumption . . . appl[ies]. Property held in joint tenancy will be divided equally between the surviving spouse and the estate of the deceased spouse. The surviving spouse will have no right of survivorship." (*Id.* at p. 1386.) However, "[i]f one spouse dies during a dissolution proceeding but before there is a judgment of dissolution, this community property presumption does not apply. Property held in joint tenancy will pass, by right of survivorship, to the surviving spouse." (*Ibid.*)

Courts have noted the " 'conundrum' " this creates: "Ordinarily, holding community property in joint tenancy form is mutually advantageous, during marriage as well as after dissolution. Once a dissolution proceeding is pending, however, 'it is illogical that [the] parties . . . would envision or desire the operation of survivorship. An untimely death results in a windfall to the surviving spouse, a result neither party presumably intends or anticipates.' " (*Estate of Mitchell, supra,* 76 Cal.App.4th at p. 1386.) Thus, once a dissolution petition has been filed, a spouse may well wish to sever any joint tenancies with the other spouse.

### 2. *Family Law Automatic Temporary Restraining Orders*

"In 1989, the Legislature enacted what is now . . . section 2040, subdivision (a)(2), which requires the summons in a dissolution proceeding to include a temporary restraining order enjoining the parties from, among other things, 'transferring, encumbering, hypothecating, concealing, or in any way disposing of any property, real or personal, whether community, quasi-community, or separate, without the written consent of the other party or an order of the court, except in the usual course of business or for the necessities of life . . . .' " (*Estate of Mitchell, supra,* 76 Cal.App.4th at p. 1387, fn. omitted.) The automatic temporary restraining order required by section 2040, subdivision (a) (hereafter, the ATRO) is, "[u]pon filing the petition and issuance of the summons and upon personal service of the petition and summons on the respondent

11

. . . in effect against the parties until the final judgment is entered or the petition is dismissed, or until further order of the court." (§ 233, subd. (a).)

As initially enacted, the ATRO statute did not expressly address the effect of the restraining order on the elimination of a right of survivorship. (Stats. 1989, ch. 1105, § 7, pp. 3972–3974.) In 1999, construing a version of the originally-enacted statute which had been renumbered multiple times "without substantial change" (*Estate of Mitchell, supra,* 76 Cal.App.4th at p. 1387, fn. 2), *Estate of Mitchell* concluded the ATRO did not prohibit one spouse from unilaterally eliminating a right of survivorship. The court reasoned that severance of a joint tenancy alone does not effect a "transfer": "no right, title, or interest in the property moved from anyone to anyone else. . . . Before the severance, [the spouses] each owned an undivided half-interest; after the severance, they each owned an undivided half-interest." (*Estate of Mitchell,* at p. 1390.) The court further held that the right of survivorship by itself "is not 'property,' " but instead "is a mere expectancy"—in other words, the unenforceable " 'interest of a person who merely foresees that he might receive a future beneficence.' " (*Id.* at p. 1392.) Therefore, the court concluded, one spouse's "sever[ance of] a joint tenancy with the other spouse by executing and recording a declaration of severance . . . does not violate an injunctive order entered pursuant to . . . section 2040, subdivision (a) . . . ." (*Id.* at p. 1395.)

B. *Legislative History*

Section 2040(b)(3) was added in 2001 by the enactment of Assembly Bill No. 873 (A.B. 873). As relevant here, A.B. 873 amended section 2040 to provide that the ATRO "[r]estrains both parties from creating a nonprobate transfer or modifying a nonprobate transfer in a manner that affects the disposition of property subject to the transfer, without the written consent of the other party or an order of the court" (§ 2040, subd. (a)(4)), and to further provide that "[n]othing in this section restrains," among other things, "[e]limination of a right of survivorship to property, provided that notice of the change is filed and served on the other party before the change takes effect" (§ 2040(b)(3)). (Stats. 2001, ch. 417, § 2, p. 3758.)

12

The relevant provisions of A.B. 873 were included to effectuate a 2000 recommendation of the California Law Revision Commission (the Commission), issued following *Estate of Mitchell.* (See Recommendation: Estate Planning During Marital Dissolution (Oct. 2000) 30 Cal. Law Revision Com. Rep. (2000) pp. 603–620 (hereafter, Commission Recommendation).) The Commission recommended that section 2040 "be amended to clarify the scope of the restraining order" because "[t]he extent to which the restraining order affects estate planning changes that only affect the disposition of property on death is not clear." (*Id.* at p. 605.) The Commission noted that, with respect to estate planning changes, "different trial courts interpret the ATRO differently — some interpret the ATRO as restraining estate planning changes while others do not." (*Id.* at p. 607.) The Commission discussed *Estate of Mitchell* and opined that it presented "a reasonable interpretation of . . . Section 2040" but did "not consider other types of estate planning changes, such as creation, modification, or revocation of a trust." (Commission Recommendation, at p. 608.)

The Commission recommended amending section 2040 "to clarify the scope of the restraining order, consistent with the . . . principles" that "[t]he ATRO should not restrain changes that cannot dispose of the other spouse's property" but "should restrain changes that could dispose of the other spouse's property." (Commission Recommendation, *supra,* at p. 605.) The Commission stated such an amendment would allow parties to a dissolution proceeding to avoid unintended transfers, as "dissolution of marriage will often lead to changes in [a] person's testamentary intentions," but "[i]f the ATRO prevents a person from making an intended estate planning change and the person dies during the dissolution proceeding, the person's estate will pass in an unintended way." (*Id.* at p. 608.) The amendment would also avoid a disproportionate effect on the nonfiling spouse: "A petitioner can effectively avoid the ATRO by making any desired estate planning changes before filing," while "[a] respondent who is unaware of a pending summons cannot avoid the ATRO in this way." (*Id.* at p. 610.)

The Commission noted that an amendment along these lines would serve the underlying purposes of the ATRO statute. It would further "a principal purpose of the

ATRO provision[,] . . . to conserve judicial resources by making automatic those types of restraints that are commonly sought and granted in dissolution proceedings" because if, as appears to be the case, "parties to a dissolution routinely wish to make estate planning changes during the proceeding, then judicial efficiency is not served by an automatic restraint of such changes." (Commission Recommendation, *supra,* at p. 609.) Moreover, restraining estate planning changes which do not affect the other spouse's property "exceeds the proper purpose of the ATRO — protecting marital assets from dissipation or concealment." (*Id.* at pp. 610–611.)

The Commission discussed various types of estate planning changes and whether they could affect the other spouse's property. (Commission Recommendation, *supra,* at pp. 611–615.) As relevant here, the Commission reasoned that revocation of revocable " 'nonprobate transfer[s]' (such as . . . joint tenancy title . . . ) . . . is similar to revocation of a will in that it terminates a mere expectancy." (*Id.* at p. 612.) The Commission concluded, "[t]here does not appear to be any reason to automatically restrain the revocation of a nonprobate transfer during a dissolution proceeding." (*Ibid.*) In contrast, the modification or creation of a nonprobate transfer could affect marital assets and should be restrained. (*Id.* at pp. 612–614.)

The Commission thus recommended amending section 2040 to provide, as relevant here, that the ATRO "[r]estrain[s] both parties from creating a nonprobate transfer or modifying a nonprobate transfer in a manner that affects the disposition of property subject to the transfer, without the written consent of the other party or an order of the court," but that "[n]othing in this section restrains" "[r]evocation of a nonprobate transfer, including a revocable trust," or "[e]limination of a right of survivorship." (Commission Recommendation, *supra,* p. 618.) The proposed amendment regarding the elimination of a right to survivorship did not include any provision requiring notice, and the proposed Commission comments stated the provision "codifies *Estate of Mitchell* . . . ." (*Id*. at p. 619.)

A.B. 873, as introduced, addressed a different Commission recommendation. (Assem. Bill No. 873 (2001–2002 Reg. Sess.) as introduced Feb. 22, 2001.) A

14

subsequent amendment added a section effectuating the Commission Recommendation described above with only one substantive change: the addition of a notice requirement for the revocation of a nonprobate transfer and the elimination of a right to survivorship. (Assem. Bill No. 873 (2001–2002 Reg. Sess.) as amended Mar. 28, 2001, § 2.)

The legislative analyses of A.B. 873's amendments to section 2040 echoed the Commission Recommendation regarding the general intent of the amendments. Legislative reports quoted the Commission Recommendation's statement that " 'the extent to which the ATRO restrains estate planning changes during a dissolution proceeding is not clear,' " and stated the "bill seeks to clarify the type of estate planning changes that are permissible while the ATRO is in effect, and those that are not," including, as relevant here, that "an ATRO . . . does not restrain a party from . . . severing a joint tenancy . . . ." (Assem. 3d reading analysis of Assem. Bill No. 873 (2001–2002 Reg. Sess.) as amended May 10, 2001, p. 3; see also Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 873 (2001–2002 Reg. Sess.) as amended Aug. 28, 2001, p. 6 [quoting the Commission Recommendation that " 'the extent to which the [ATRO] affects estate planning changes that only affect the disposition of property on death is not clear' " and stating the bill seeks "to clarify the scope of the restraining order, consistent with the principle that the ATRO should not restrain changes that cannot dispose of the other spouse's property, and that the ATRO should restrain changes that could dispose of the other spouse's property"].)

Like the Commission Recommendation, the legislative analyses indicated that the amendments would further the underlying purposes of the ATRO provision. One report discussed judicial efficiency, stating the bill's sponsor "contends that the changes proposed by this bill are designed to avoid unnecessary litigation between former spouses and estates (or beneficiaries) of decedents." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 873 (2001–2002 Reg. Sess.) as amended Aug. 28, 2001, p. 6.) Another analysis discussed the Commission Recommendation's comments that "the revocation of a revocable nonprobate transfer is similar to revocation of a will in that it terminates a mere expectancy – but does not

15

otherwise dispose of community property – and also should not be automatically restrained. However, unlike wills, which may only dispose of the testator's one-half of the community property, 'modification of a nonprobate transfer . . . can result in an unauthorized transfer of community property,' and therefore should be prohibited during the pendency of a dissolution proceeding." (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 873 (2001–2002 Reg. Sess.) as amended Mar. 28, 2001, p. 6.)

Legislative analyses also highlighted the Commission's concern about "unintended transfers [that] may occur due to the inability of a person to, for example, revoke a trust during a pending divorce. For example, if community property had been conveyed to a trust that names the survivor of husband and wife as the beneficiary and that is unilaterally revocable by either one, and the wife files for divorce, revokes the trust, executes a will devising her share of the community property to her children, and then dies before she gets a court order permitting the estate planning change or before the divorce becomes a judgment, her husband would get her entire community property share, contrary to her wishes." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 873 (2001–2002 Reg. Sess.) as amended May 10, 2001, pp. 13–14.) This analysis also discussed *Estate of Mitchell* and stated the bill "will, according to the [Commission], follow the court's ruling in [*Mitchell*,] supra, and serves to extend it clearly to other types of nonprobate transfers that do not dispose of the other party's property." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 873 (2001–2002 Reg. Sess.) as amended May 10, 2001, pp. 13–14.)

With respect to the new notice provision, however, the legislative history says very little. The only discussion in the committee reports provided: "In order to minimize the opportunity for mischief, this bill expressly requires notice to the other spouse before severing a joint tenancy or revoking a nonprobate transfer." (Assem. 3d reading analysis of Assem. Bill No. 873 (2001–2002 Reg. Sess.) as amended May 10, 2001, p. 3; see also Assem. Com. on Judiciary, Analysis of Assem. Bill No. 873 (2001–2002 Reg. Sess.) as amended Mar. 28, 2001, p. 6 [same].) An Assembly Republican bill analysis stated one of the arguments in support of the bill was that it "would further reduce potential

16

mischief of such transfers [permitted under the bill] otherwise subject to an ATRO by expressly requiring notice to the other spouse before the severing of a joint tenancy or the revoking of a nonprobate transfer of property." (Assem. Republican Caucus, analysis of Assem. Bill No. 873 (2001–2002 Reg. Sess.) p. 2.) The legislative analyses do not elaborate on the "mischief" that was the focus of the Legislature's concern.

Insight on this issue can be gained from a Commission staff memorandum, issued just prior to the A.B. 873 amendment adding the amendments to section 2040. (Cal. Law Revision Com., Staff Memorandum 2001–37, Estate Planning and Dissolution of Marriage: A.B. 873 (Harman) (Mar. 21, 2001) (Staff Memo).) The memorandum noted the sponsor of A.B. 873—which, as introduced, did not include the section 2040 amendments in the Commission Recommendation—was willing to amend A.B. 873 to add these amendments. (Staff Memo, at p. 5.) However, counsel for the Assembly Judiciary Committee told Commission staff she "had one concern about the proposed law: if one party can unilaterally revoke a trust, that will free up the trust assets, increasing the likelihood that those assets might be dissipated or hidden. She proposes that a person who revokes a nonprobate transfer during a dissolution proceeding should be required to provide notice of the action to his or her spouse. The spouse would then be in a better position to protect against dissipation or concealment of marital property. She indicated that the bill might not pass the committee if a notice requirement were not added." (*Id.* at pp. 1, 5–6.) The memorandum proposed revising the proposed amendment to add the notice provision that was ultimately enacted. (*Id.* at p. 6.) The memorandum also proposed revising the Commission's comment to section 2040(b)(3) to provide that it "is consistent with," rather than "codifies," *Estate of Mitchell.* (Staff Memo, at p. 7.) The Commission ratified the changes proposed in the memorandum at its March 2001 meeting (Cal. Law Revision Com., Minutes of Meeting (Mar. 29-30, 2001)

17

p. 19) and when A.B. 873 was amended to add the section 2040 amendments, it included these changes (Assem. Bill No. 873 (2001–2002 Reg. Sess.) as amended Mar. 28, 2001).[8]

C. *Analysis*

The legislative history shows the Legislature, in enacting A.B. 873 to amend section 2040, intended to further the underlying purposes of the ATRO provision: to promote judicial efficiency and protect marital property from dissipation or concealment. The Legislature also intended to avoid unintended transfers if a spouse dies during a dissolution proceeding, by enabling spouses to make estate planning transactions that

---

[8] The Commission staff memorandum rejected the Assembly Judiciary Committee counsel's concern that "allowing revocation of a nonprobate transfer would significantly increase the likelihood of dissipation or concealment of assets subject to the nonprobate transfer" because "[t]he ATRO already restrains any transfer of property. In order to improperly dispose of assets subject to a revoked nonprobate transfer, a person would need to violate that general provision of the ATRO. A person willing to violate the ATRO in order to misappropriate marital assets would probably not comply with a notice requirement." (Staff Memo *supra*, p. 6.) The memorandum nonetheless recommended adding the notice provision for a different reason: "If a person makes significant changes to an instrument governing disposition of marital property in the course of a dissolution proceeding, it seems reasonable that the person's spouse should be informed. The spouse would then be alerted that an element of the spouse's estate plan has been changed, and that the spouse may need to adjust his or her estate plan in light of the change. Notice may also alert a spouse of the need to make similar changes to other instruments. Considering the generally beneficial effect of a notice requirement, the staff recommends that a notice provision be added." (*Ibid.*) Staff recommended adding the requirement that notice be filed and served "to ensure that there is a record of the notice, in case the validity of the revocation or severance is subsequently challenged on the basis of an alleged failure to provide the required notice." (*Id.* at p. 7.) We decline to consider these comments as part of the statute's legislative history because there is no evidence the concerns of the Commission staff reflected the concerns of legislators or were ever conveyed to legislators. (See *Juran v. Epstein* (1994) 23 Cal.App.4th 882, 894, fn. 5 ["Since . . . there was no evidence [a memorandum written by a Commission staff member] was considered or even seen by the Legislature, it is entitled to little or no weight in discerning legislative intent."].) In contrast, the memorandum's discussion of the concerns voiced by the counsel for the Assembly Judiciary Committee is appropriately considered as part of the legislative history: the committee counsel was apparently voicing a concern raised by legislators, and the same concern was subsequently reflected in legislative analyses.

could not dispose of the other spouse's property. The Legislature recognized that while certain estate planning transactions could not dispose of the other spouse's property, they could free up marital property to be dissipated or concealed in a subsequent transaction. As to these transactions, the Legislature apparently sought to balance the various statutory purposes by permitting the transaction but requiring notice to the other spouse before the change effected by the permitted transaction took place. With this understanding of the legislative history and statutory purpose, we now consider the possible constructions of section 2040(b)(3).

As an initial matter, Raney suggests that the ATRO required by section 2040, subdivision (a), does not prohibit the elimination of a right to survivorship.[9] Raney argues that, if section 2040, subdivision (a), does not prohibit the elimination of a right of

---

[9] We note that there is support for such a construction. *Estate of Mitchell* held that the prohibition on transfers of property (§ 2040, subd. (a)(2)) did not apply to eliminating a right of survivorship, and the legislative history contains indications of an intent to amend the statute consistent with this holding. (See Sen. Com. on Judiciary, Analysis of Assem. Bill No. 873 (2001–2002 Reg. Sess.) as amended May 10, 2001, p. 14 ["The changes proposed by AB 873 will, according to the [Commission], follow the court's ruling in [*Estate of Mitchell*] . . . ."]; Cal. Law Revision Com. com., foll. § 2040 ["Subdivision (b)(3) . . . is consistent with *Estate of Mitchell*, 76 Cal.App.4th 1378, [*supra,*] (restraining order does not restrain severance of joint tenancy)."].) A.B. 873 added a new prohibition to the ATRO, restraining spouses from unilaterally "creating a nonprobate transfer or modifying a nonprobate transfer in a manner that affects the disposition of property subject to the transfer . . . ." (§ 2040, subd. (a)(4).) Joint tenancy is one type of nonprobate transfer. (Commission Recommendation, *supra*, at p. 612 (identifying "joint tenancy title" as one type of " 'nonprobate transfer' "]; Sen. Com. on Judiciary, Analysis of Assem. Bill No. 873 (2001–2002 Reg. Sess.) as amended May 10, 2001, p. 8 [same].) But the legislative history distinguishes between the revocation of a nonprobate transfer, which "terminates a mere expectancy" and need not be restrained during dissolution proceedings, and the modification or creation of a nonprobate transfer, which could result in an unauthorized transfer of community property. (Commission Recommendation, at pp. 612–614; Assem. Com. on Judiciary, Analysis of Assem. Bill No. 873 (2001–2002 Reg. Sess.) as amended Mar. 28, 2001, p. 6.) This suggests a construction of section 2040, subdivision (a)(4), that does not apply to the elimination of a right of survivorship. The remaining ATRO provisions are clearly inapplicable. (§ 2040, subd. (a)(1) & (3) [restraining conduct involving the parties' minor child or children and insurance]; see fn. 5, *ante*.)

19

survivorship, then the ATRO imposes no limitation whatsoever on a party's ability to eliminate a right of survivorship. But reading the relevant statutory provisions as a whole—section 2040, subdivision (a), and section 2040(b)(3)—evidences a clear legislative intent that the ATRO permits a party to eliminate a right of survivorship but requires prior notice to the other party. "Our primary task in interpreting a statute is to determine the Legislature's intent, giving effect to the law's purpose." (*Tuolumne Jobs, supra,* 59 Cal.4th at p. 1037.) Accordingly, we so construe these statutory provisions, and the resulting ATRO.

We now turn to the construction of the notice provision itself. Lawrence argues section 2040(b)(3) should be construed to provide that a joint tenancy severance that is recorded—and therefore effective under the generally-applicable Civil Code statute (Civ. Code, § 683.2, subd. (c))—before notice is served and filed on the other spouse is rendered void. This is a reasonable interpretation of the statutory language. However, such a construction would frustrate, rather than further, the underlying legislative purposes. First, it would require litigation to render such a severance void, but if the severing spouse was still alive, he or she could simply redo the severance with prior notice. This would render the judicial proceeding voiding the first severance a practical waste of time, undermining the goal of judicial efficiency. Second, this construction would nullify a severance recorded before notice was provided even where notice was filed and served shortly after recordation and no "mischief" as to marital assets took place in the interim period. This would not further the underlying purpose of preserving marital assets. Third, it creates a risk of unintended transfers if a spouse records before providing notice and dies before learning the lack of prior notice rendered the severance void. Indeed, it could encourage gamesmanship where the nonsevering spouse, who was served with notice after recordation, intentionally does not alert the severing spouse as to the invalidity of the severance because, if the severing spouse dies during the dissolution proceeding, the severance can be invalidated and cannot be redone. This undermines the Legislature's intent to generally allow spouses to make estate planning changes that do

20

not dispose of the other spouse's property.[10] Accordingly, if another reasonable construction better serves the legislative purposes, we should adopt it. (*Gilbert v. Chiang* (2014) 227 Cal.App.4th 537, 551 [" ' "Where the language of a statute is reasonably susceptible of two constructions, one which, in application, will render it reasonable, fair and harmonious with its manifest purpose, and another which will be productive of absurd consequences, the former construction will be adopted." ' "].)[11]

A more appropriate interpretation of the statute adds a requirement in the ATRO before elimination of the right of survivorship can take effect, on top of the requirements imposed by Civil Code section 683.2, subdivision (c), but permits these requirements to be completed in any order. In other words, if a spouse first files and serves notice of a joint tenancy severance on the other spouse and then records the severance in compliance with the Civil Code, the elimination of the right of survivorship takes effect upon recordation. Alternatively, if the spouse first records the severance and then files and serves notice on the other spouse, the elimination of the right of survivorship takes effect when the notice is filed and served.

This construction would promote judicial efficiency by reducing the grounds for voiding a joint tenancy severance. It also furthers the goal of avoiding unintended transfers as long as notice is filed and served on the nonsevering spouse, by effectuating a joint tenancy severance when all the requirements are complete, regardless of the order in

---

[10] Lawrence argues that, if he had received notice before the Deed was recorded, he could have "ask[ed] the Family Court to order Veronica to refrain from attempting to convey community property." Lawrence provides no authority he would have been entitled to such an order. To the contrary, the plain language of section 2040(b)(3) and the legislative history are clear that parties to a pending dissolution proceeding may unilaterally eliminate a right of survivorship, provided notice is filed and served before the elimination takes effect.

[11] A slightly different construction, proposed by Raney, is that recording a joint tenancy severance before providing notice renders the severance voidable, rather than void, and the severance should only be voided if the other spouse was prejudiced. This construction would result in even more burdensome litigation, as trial courts would have to adjudicate prejudice. The purpose of judicial efficiency would not be served.

21

which they were completed.  It gives effect to the notice provision, and helps prevent potential "mischief" involving marital assets during a dissolution proceeding, by requiring notice be filed and served before the joint tenancy severance is effective to eliminate the right of survivorship.  This is a reasonable construction of the statutory language and is the construction that best serves the underlying statutory purposes.  Accordingly, we adopt it.

D.  *Proper Proceeding for Filing Notice*

Finally, Lawrence contends that notice of Veronica's joint tenancy severance was never filed and served pursuant to section 2040(b)(3) because it was not filed in the Dissolution Action.  We agree with Raney that filing and serving the Partition Complaint, which attached the Deed severing the joint tenancy, was sufficient under section 2040(b)(3).  Neither the statutory language, the legislative history, or the ATRO contained in the summons suggest that the filing must be in a dissolution action to comply with the ATRO.  The Legislature's concern was that the other spouse has actual knowledge of the severance.  Whether this knowledge is obtained by a filing in the dissolution proceeding or in some other proceeding is of no moment.

E.  *Conclusion*

In sum, under the ATRO and section 2040, parties to pending dissolution proceedings are restrained from unilaterally eliminating a right of survivorship unless, in addition to the generally-applicable requirements for effectuating such a change, notice of the elimination is filed and served on the other spouse.  The requirements to unilaterally eliminate a right of survivorship may be completed in any order.  When the last remaining requirement is completed, the elimination of the right of survivorship takes effect.[12]  Accordingly, when the Partition Complaint was filed and served on Lawrence in

---

[12] In this case, notice of the severance was filed and served on Lawrence before Veronica's death.  We therefore need not decide whether such a severance would be effective to eliminate a right of survivorship if it were not filed and served until after the severing tenant's death.  We note, however, that to permit notice to be filed and served after the severing tenant's death would implicate the concerns underlying the enactment of Civil Code section 683.2, subdivision (c).  (See part III.A.1, *ante.*)  Specifically, a

June 2016, Veronica's severance of the joint tenancy became effective to eliminate the right of survivorship. When Veronica subsequently died, her 50 percent tenancy in common interest was her separate property and became part of her estate.[13]

IV. *Rent Order*

The statement of decision found that, "to the extent [Raney] as Executor makes a demand for rent after entry of judgment in this matter, [Lawrence] is obligated to pay one half of the reasonable fair market rent for the [Property] . . . ." Lawrence challenges this ruling on the ground that a legal ouster is required before such an order and no evidence of ouster was made. Raney argues that no ouster is required and, in any event, there is substantial evidence supporting an implied finding of ouster.

"Absent an ouster a cotenant out of possession has no right to recover the rental value of the property from a cotenant in possession." (*Estate of Hughes* (1992) 5 Cal.App.4th 1607, 1611.) " 'An ouster, in the law of tenancy in common, is the wrongful dispossession or exclusion by one tenant of his cotenant or cotenants from the common property of which they are entitled to possession.' [Citation.] Whether there has been an

spouse could record a joint tenancy severance but not file and serve notice. If the other spouse died, the severance would be ineffective and the first spouse could take the whole property by survivorship. If the severing spouse died, his or her heirs could then file and serve notice, effectuating the elimination of the right of survivorship.

[13] We need not decide Raney's alternative arguments that Veronica substantially complied with the ATRO and that Lawrence failed to demonstrate prejudice from any trial court error. We also need not decide the parties' dispute over whether a remedy for a recorded but invalid joint tenancy severance was available to Lawrence in the Dissolution Action. We note that Lawrence arguably contends the Deed should be found void because it contained the false statement that it was "[a] transfer to a spouse or former spouse in connection with a property settlement agreement or a decree of dissolution of marriage or legal separation." This statement in the Deed addressed the transfer to the Trust, which the trial court cancelled and which is not at issue in this appeal. It has no bearing on the validity of the joint tenancy severance. Finally, for the first time in his reply brief, Lawrence contends Raney should be denied relief under the doctrine of unclean hands. He forfeited the issue and we decline to address it. (*Tellez v. Rich Voss Trucking, Inc.* (2015) 240 Cal.App.4th 1052, 1066 [" ' "points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before" ' "].)

ouster is a legal question. Where the facts are disputed we must defer to the trial court's factual findings but we must nonetheless decide the legal issue de novo." (*Id.* at p. 1612.)

Evidence of an ouster includes "changing the locks on the doors, posting 'no trespassing' signs on the property and denying the cotenant admittance . . . ." (*Estate of Hughes, supra,* 5 Cal.App.4th at p. 1612.) However, ouster may also be established by the tenant in possession's litigation position claiming sole ownership of the property. "[A]n ouster is 'proved by acts of an adverse character, such as *claiming the whole for himself, denying the title of his companion*, or refusing to permit him to enter. . . . [Citations.]' [Citation.] '[A]n action by a tenant in common against his cotenant to be admitted into the possession, a denial in the answer of the plaintiff's title and right of entry is equivalent to an ouster.' " (*Id.* at p. 1615.) In *Estate of Hughes,* the court held ouster established on this basis: "at common law ouster was established by a cotenant's unambiguous conduct manifesting an intent to exclude another cotenant from gaining or sharing possession of jointly owned property. Here [the tenant in possession] manifested a similar intent by categorically alleging in his petitions that he was the sole owner of the property and that [the other tenants] had no interest in the property. On this basis we conclude the petitions were the functional equivalent of changing locks or posting 'no trespassing' signs telling a cotenant out of possession that he or she may not enter the premises." (*Id.* at p. 1614.)

In this action, Lawrence has consistently asserted that Veronica's joint tenancy severance was invalid and that Raney—in either of his capacities—possesses no interest in the Property. Like the petitions in *Estate of Hughes* claiming sole ownership of the property, Lawrence's litigation position is evidence of ouster, thereby justifying the trial court's rent order.

## DISPOSITION

The judgment is affirmed. Respondent is awarded his costs on appeal.

24

_____

SIMONS, Acting P.J.

We concur.

_____

NEEDHAM, J.

_____

BURNS, J.

(A152549)

25

Superior Court of Alameda County, No. RG15768187, Hon. Sandra K. Bean, Judge.

Law Offices of John R. Browne III and John R. Browne III, for Defendant and Appellant.

Wendel, Rosen, Black & Dean, Thiele R. Dunaway and Kevin M. Rodriguez, for Plaintiff and Respondent.