Filed 5/7/25  San Pasqual Fiduciary Trust Co. v. Forer CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| SAN PASQUAL FIDUCIARY TRUST COMPANY, | |
| Plaintiff and Appellant, | G062456 |
| v. | (Super. Ct. No. A239915) |
| JEFFREY FORER, as Administrator, etc., et al., | O P I N I O N |
| Defendants and Appellants; | |
| CLUNIES A. HOLT et al., | |
| Defendants and Respondents. | |

Appeal from an order of the Superior Court of Orange County, David L. Belz, Judge. Affirmed in part, reversed in part, and remanded.

Poindexter & Doutre, Inc., Jefferey A. Kent and Daniel C. Drummy for Plaintiff and Appellant.

Klapach & Klapach, Joseph S. Klapach; Hinojosa & Forer and Jeffrey Forer for Defendants and Appellants.

Baker, Burton & Lundy and Brad N. Baker for Defendants and Appellants James A. Holt, Jr., and Cameron H. Schmidt.

Law Offices of William B. Hanley and William B. Hanley for Defendants and Respondents.

\* \* \*

We imagine that when most settlors form a family trust, they do so with the intent of financially providing for their heirs in a manner that prevents or at least reduces squabbling among future generations. That did not happen here. This probate case concerns the David Scott Denholm and Clunies Manson Denholm Trust dated April 2, 1973 (the trust). The trust has been the subject of litigation for about 20 years, and this court has decided several appeals on various issues arising from it. While the prior disputes were largely between the trust's beneficiaries, this appeal and cross-appeal primarily involve disputes concerning the trustee and various creditors.

The daughter of the trustors, Clunies A. Holt (Clunies A), had an income interest in the trust and was the sole income beneficiary when she died in 2020.[1] Following her death, various petitions were filed in this probate case. The present trustee San Pasqual Fiduciary Trust Company (San Pasqual) asked for a ruling as to whether Clunies A's remainder beneficiaries under the trust were limited to her three children or included her three children and seven grandchildren. San Pasqual also sought directions as to whether $517,043 in undistributed income that had accrued during Clunies A's lifetime (the undistributed income) belonged to her estate or the trust.

---

[1] Since numerous family members connected to the trust share the same surname, we refer to them by their first names.

Petitions were also filed by various judgment creditors of Clunies A and her daughter, Clunies E. Holt (Clunies E). Clunies A and Clunies E had been involved in a civil lawsuit (the civil action) against Clunies A's brother, David M. Denholm (David), and various entities he owned. David was the trustee of the trust before San Pasqual. The civil action resulted in a judgment against David in favor of the trust. But Clunies A and Clunies E lost all the claims they asserted against David's entities. Those entities obtained judgments for attorney fees and costs against Clunies A and Clunies E, which they later assigned to David (collectively with his entities, the creditors). After Clunies A's death, the creditors sought orders directing San Pasqual to satisfy their judgments from the trust's assets. In response, Clunies A and Clunies E's attorney from the civil action, William B. Hanley, claimed he had an attorney's lien on trust property that had priority over the creditors' judgments.

The petitions were heard by a referee, whose findings were adopted by the probate court. The court ruled that (1) Clunies A's remainder beneficiaries were her three children and seven grandchildren, (2) the undistributed income belonged to Clunies A's estate, not the trust, (3) the creditors and Hanley's claims against Clunies A had to be asserted against her estate, not the trust, and (4) Hanley had an attorney's lien on any distributions made to Clunies E, which had priority over the creditors' judgments. San Pasqual appealed this order, and the creditors filed a cross-appeal.

San Pasqual challenges the court's ruling that the undistributed income belongs to Clunies A's estate. Specifically, it argues the referee and

3

court misinterpreted former Probate Code section 16347, subdivision (b).[2] (Stats. 1999, ch. 145, § 5, operative Jan. 1, 2000.) As San Pasqual reads this statute, the undistributed income must remain in the trust so it can be paid to certain remainder beneficiaries of Clunies A's interest. We disagree with San Pasqual's interpretation of this statute and find no error in this portion of the court's ruling.

In the cross-appeal, the creditors argue the court erred by finding Hanley has an attorney's lien on Clunies E's trust distributions that has priority over their judgments. We agree. As their attorney, Hanley only had a lien on any recovery made by Clunies A and Clunies E as individuals. Neither obtained an individual recovery. The only recovery was the judgment against David, which was entered in favor of the trust. Further, even if Hanley had a lien on this judgment, it no longer belongs to the trust. It was assigned by the trust to David in 2021 "free and clear" of Hanley's lien. Thus, there is no property in the trust to which Hanley's lien could attach.

The probate court's order is affirmed in part and reversed in part, and the matter is remanded for further proceedings.

FACTS AND PROCEDURAL HISTORY

I.

THE TRUST

Given the lengthy history of this case, we focus on the facts pertinent to the issues before us.

The trust was formed by David Scott Denholm and Clunies Madison Denholm (collectively, the trustors), who are both deceased. The

---

[2] All further undesignated statutory references are to the Probate Code.

4

former passed in 1984, and the latter in 2005. The trustors had two children: David and Clunies A. The trust was intended to divide the trust assets equally between David and Clunies A, but it appears to have been a source of enmity between the siblings.

David served as trustee of the trust until his resignation in December 2007. Following his resignation, the court appointed San Pasqual as interim trustee. As to his half of the trust property, David was a 50 percent income beneficiary until the fifth anniversary of the last trustor's death. At the end of this five-year period, which occurred in 2010, his trust interest terminated, and he was entitled to receive his share of the trust's principal. David received his principal distribution in 2021, and he is no longer a beneficiary of the trust. The reasons for the delay are immaterial to our analysis.

The issues in this appeal arise from Clunies A's share of the trust. Clunies A had a life income interest in her trust share. Upon her death, her trust portion was to "be distributed in trust to her *issue*, IN EQUAL SHARES." (Italics added.) Her issue would receive income from these shares until they reached certain ages: one-third of the principal would be paid when the beneficiary reached the age of 25, another third would be paid at the age of 30, and the remaining third would be paid to the beneficiary at the age of 35. In other words, Clunies A's surviving issue under the age of 35 would be income beneficiaries of the trust. Once the issue reached the age of 35, they would receive the full amount of their share's principal and cease to be beneficiaries.

Clunies A died in July 2020. At the time of her death, she was survived by three children and seven grandchildren. Her children were Clunies E, Cameron Holt Schmidt (Cameron), and James A. Holt, Jr.

5

(James). Cameron had five children, and James had two (collectively, the seven grandchildren). When the petitions were heard below, Clunies E, Cameron, and James were all over the age of 35, but the seven grandchildren were between the ages of 21 and 31.

At the time of the hearing, the trust's net value was about $9.75 million, and it had limited liquidity. Its primary asset was a piece of commercial real property, and its cash and equivalents totaled less than five percent of its total assets. While Clunies A was still alive, her share of the trust generated $517,043 in income between 2016 to July 2020 that was not distributed prior to her death (defined above as the undistributed income). As explained later, one of the parties' disputes concerns whether the undistributed income belongs to the trust or Clunies A's estate.

II.

HANLEY AND THE CREDITORS' CLAIMS

David is a real estate developer that used various entities to invest the trust's money into real estate ventures. Nearly two decades ago, Clunies A and Clunies E filed a civil action against David—both in his capacity as an individual and as trustee of the trust—and several of his entities (the civil action). They brought this suit in their individual capacities and accused David and his entities of committing various torts, including fraud and breach of fiduciary duty.

Judgment in the civil action was entered in 2011. The court ruled against David on certain claims and awarded the trust damages totaling roughly $5.7 million (the $5.7 million judgment). To clarify, only the trust was awarded damages and neither Clunies A nor Clunies E prevailed as individuals.

6

Judgment was entered against Clunies A and Clunies E on all the claims they asserted against David's entities. The court subsequently granted each entity's motion for fees against them. In all, the court ordered Clunies A and Clunies E, jointly and severally, to pay attorney fees and costs to the following entities (defined above with David as the creditors): (1) $368,373 plus interest to Bundy Plaza-WLA, Ltd. (Bundy); (2) $52,390 plus interest to Calco Properties LLC (Calco); and (3) $479,164.25 plus interest to Waterpointe Development Companies, LLC (Waterpointe) and its managing member, HGC Irvine, LLC (HCG). These judgments were later assigned to David.[3]

Hanley represented Clunies A and Clunies E in the civil action and in this probate case. In the civil action, he filed a motion for attorney fees under the common fund doctrine, but his motion was denied in 2015.[4] Likewise, in 2016, Clunies A and Clunies E made a motion in this probate

---

[3] Interest and additional costs have increased these amounts to (1) $83,824 to Calco; (2) $448,001.28 to Bundy; (3) $1,141,099.83 plus $28,955.56 in costs to Waterpointe and HCG. Though these judgments were assigned to David, the cross-appeal lists David, Bundy, Calco, HCG, Waterpointe, and Forer (as administrator of Clunies A's estate) as the cross-appealing parties.

[4] The common fund doctrine "is a venerable exception to the general American rule disfavoring attorney fees in the absence of statutory or contractual authorization. [Citation.] The exception 'is grounded in "the historic power of equity to permit the trustee of a fund or property, or a party preserving or recovering a fund for the benefit of others in addition to himself, to recover his costs, including his attorneys' fees, from the fund of property itself or directly from the other parties enjoying the benefit."'" (*Lealao v. Beneficial California, Inc.* (2000) 82 Cal.App.4th 19, 27, italics omitted.)

case under the common fund doctrine for their attorney fees from the civil action. Their motion was also denied.

Following the denial of these motions, Hanley filed a Notice of Attorney Lien in this probate case in 2019. He asserted an attorney's lien against the trust "created by written contract on the proceeds of any recovery of the judgment entered in [the civil action] for the benefit of [the trust]." Hanley claimed he was owed nearly $1.9 million in fees and about $1 million in costs.

As discussed above, David's principal distribution of his half of the trust was delayed until 2021. Since the trust had limited liquidity, San Pasqual filed a petition to include the $5.7 million judgment against David as part of his principal distribution. It also sought an order "that such a distribution would not violate Mr. Hanley's lien." Hanley filed no opposition to this request. The probate court granted San Pasqual's petition, and the trust assigned the $5.7 million judgment to David *free and clear of the Hanley lien.*

III.

THE INSTANT DISPUTES

After Clunies A passed away in July 2020, several petitions were filed in this probate case.

First, San Pasqual sought instructions from the probate court concerning the proper distribution of Clunies A's remainder interest in the trust. Specifically, San Pasqual asked the court whether the trust's use of the term "issue" referred to only Clunies A's three children (Clunies E, Cameron, and James) or whether it included her three children and the seven grandchildren. If the former, then her share of the trust would be divided into three equal shares, whose principal would be fully distributed to Clunies E,

8

Cameron, and James since they were all over the age of 35. If the latter, Clunies A's share of the trust would be divided into 10 equal shares, and there would still be seven mandatory income beneficiaries since none of the grandchildren had reached the age of 35.

Second, after Clunies A's death, her own estate became subject to a probate action in the Los Angeles Superior Court (the LA estate action). Jeffrey Forer was appointed as the administrator of Clunies A's estate. Under Clunies A's estate plan, her only beneficiary is Clunies E. In this probate case, San Pasqual filed a petition asking the court to determine whether the undistributed income belonged to the trust (where it would be distributed to Clunies A's issue) or to Clunies A's estate (where it would presumably be subject to her creditors' claims and/or distributed to Clunies E solely). San Pasqual believed the undistributed income belonged to the trust, while Forer claimed it belonged to Clunies A's estate.

Third, on behalf of the creditors, Forer filed petitions under section 15306.5, seeking orders directing San Pasqual to satisfy the creditors' judgments against Clunies A and Clunies E. In response, Hanley asserted his purported attorney's lien on the trust assets had priority over the creditors' judgments.

The court appointed a referee (the referee), the Honorable Mary Fingal Schulte (Ret.), to hear the petitions under Code of Civil Procedure section 638, subdivision (a). Before her retirement, Judge Schulte had been assigned to the probate court and had heard some of the prior disputes between the parties. After a hearing, the referee issued her final statement of decision in September 2022 (the statement of decision).

As to the first issue, the referee found Clunies A's remainder interest in the trust was to be split into 10 equal shares and divided among

9

Clunies A's children (Clunies E, Cameron, and James) and the seven grandchildren. As to the second issue, the referee found that under former section 16347, subdivision (b), the undistributed income belonged to Clunies A's estate and not the trust.

On the third issue concerning the creditors' petitions, the referee made different rulings as to Clunies A and Clunies E. As to Clunies A, the referee found the creditors' claims had to be asserted against her estate in the LA estate action, so it dismissed their petitions without prejudice. Likewise, the referee explained that Hanley's remedy was against Clunies A's estate, not the trust, and had to be asserted in the LA estate action. As to Clunies E, the referee determined she was entitled to 100 percent of her share's principal since she was over the age of 35. The referee clarified that neither the creditors nor Hanley had any claims against the trust as to Clunies E's share of *undistributed* principal. However, after the trust made distributions to Clunies E, Hanley had a valid attorney's lien against these distributions that had priority over the creditors' judgments.

The probate court subsequently entered an order (the order) incorporating the referee's rulings. Among other things, the order states (1) the remainder of Clunies A's interest in the trust would pass to her 10 issues (her three children and seven grandchildren) in equal shares; (2) the undistributed income belonged to Clunies A's estate and not the trust; (3) Hanley had a valid attorney's lien against Clunies E's beneficial interest in the trust, which would attach upon distribution of her share of the trust's assets; (4) Hanley's attorney's lien against Clunies E's beneficial interest had priority against the creditors' judgments; and (5) any claims by the creditors or Hanley against Clunies A had to be brought against her estate in the LA estate action.

10

San Pasqual appeals the order, challenging the probate court's ruling that the undistributed income belongs to Clunies A's estate and not the trust. James and Cameron have joined San Pasqual's arguments, while Hanley and the creditors oppose its appeal. The creditors have also filed a cross-appeal, arguing the court erred by granting Hanley's purported attorney's lien priority over their judgments. We begin by addressing San Pasqual's appeal and then turn to creditors' cross-appeal.

DISCUSSION

I.

THE UNDISTRIBUTED INCOME

A. *The Parties' Arguments*

San Pasqual's argument that the undistributed income belongs to the trust is based on former sections 16335, subdivision (a)(1) and 16347, subdivision (b), which were in effect when the petitions were heard below.[5] Under former section 16335, subdivision (a)(1), a trustee was required to "administer a trust . . . in accordance with the trust." (Former § 16335, subd. (a)(1), added by Stats. 2005, ch. 100, § 2, operative Jan. 1, 2006.) Thus, a trustee was obligated to follow a trust's instructions on the payment of undistributed income.

If a trust was silent as to payment of undistributed income, then former section 16347, subdivision (b) applied. It stated, "on the date when a mandatory income interest ends, the trustee shall pay to a mandatory income

---

[5] Effective on January 1, 2024, former section 16347 was amended and renumbered as section 16377 (Stats. 2023, ch. 28, § 2, operative Jan. 1, 2024), while former section 16335, subdivision (a)(1) was amended and renumbered as section 16325, subdivision (a)(2) (Stats. 2023, ch. 28, § 2, operative Jan. 1, 2024).

11

beneficiary who survives that date, or to the estate of a deceased mandatory income beneficiary whose death causes the interest to end, the beneficiary's share of the undistributed income that is not disposed of under the trust." (Former § 16347, subd. (b).)

San Pasqual argues the trust is silent as to the payment of the undistributed income, so former section 16347, subdivision (b) applies. As we explain in detail below, it argues that under this statute, the seven grandchildren are "mandatory income beneficiar[ies] who survive[d] [the end] date" of Clunies A's mandatory income interest. (See former § 16347, subd. (b).) Thus, it maintains the undistributed income must be paid to the seven grandchildren through the trust.

Hanley and the creditors both disagree with San Pasqual but for different reasons. Hanley claims the payment of the undistributed income is controlled by Article VII of the trust, so former section 16347 does not apply. Like San Pasqual, the creditors agree that former section 16347 governs. But they believe the statute requires the undistributed income be paid to "the estate of a deceased mandatory income beneficiary whose death cause[d] the interest to end," i.e., Clunies A's estate. (See former § 16347, subd. (b).)

We begin by addressing Hanley's argument since, if he is correct, we need not analyze former section 16347, subdivision (b).

B. *Article VII of the Trust*

The referee and court rejected Hanley's argument that Article VII of the trust controls payment of the undistributed income. Since Hanley's argument is based on the trust's text and not extrinsic evidence, our review is de novo. (*Trolan v. Trolan* (2019) 31 Cal.App.5th 939, 948.)

Article VII of the trust states, "the income from [Clunies A's portion] of the trust estate shall be paid in monthly or other convenient

12

installments to or for the use of CLUNIES A. HOLT as long as she shall live, and thereafter said income shall be paid to or for the use of her issue, IN EQUAL SHARES, as hereafter set forth." As Hanley reads this provision, any income that accrued in the trust during Clunies A's lifetime, including undistributed income, vested in Clunies A. Thus, the undistributed vested income belongs to her estate upon her death.

We disagree. The above provision states that trust income shall be paid to Clunies A "as long as she shall live." This only establishes that Clunies A was an income beneficiary of the trust during her lifetime. Article VII expressly addresses the payment of David's undistributed income. It provides that after the death of the last trustor, David would receive income from the trust for five years. After this five-year period, "the Trust [would] terminate as to [his] undivided one-half . . . of the trust estate and this, together with one-half . . . of *any undistributed income*, [would] be distributed to [David]." (Italics added.) While Article VII of the trust expressly addresses the payment of undistributed income as to David's trust portion, it fails to include any similar provision as to Clunies A's portion. From this, we can reasonably infer the trustors chose not to address the payment of undistributed income as to Clunies A.

We are not persuaded by Hanley's citation to *Warner v. Warner* (1960) 183 Cal.App.2d 846. In *Warner*, the relevant clause stated, "the net income received and derived from [the trust], and *available for distribution* shall, by my Trustees be paid over and distributed unto my son, [the beneficiary], . . . during his lifetime." (*Id*. at pp. 849, 852–853, italics added.) The trustee in *Warner*, had divided up $1,115.77 in income from the prior year to be paid to the beneficiary in 12 monthly installments of $92.98. He had paid four installments ($371.92) when the beneficiary died, leaving an

13

unpaid balance of $743.85. (*Id.* at p. 851.) The court held the unpaid $743.85 had vested in the beneficiary and belonged to his estate. (*Id.* at pp. 852–854.) It explained, the right of the beneficiary "to the net income for the year preceding his death had become vested; payment merely and not ownership was postponed until the [next] year." (*Id.* at p. 852.)

Unlike *Warner*, San Pasqual had not marked the undistributed income to be paid to Clunies A, and it had not vested in her when she died. Rather, the record shows San Pasqual had not paid the undistributed income to Clunies A because "'there were "unknowns" with respect to distributable income.'" Among other things, San Pasqual "did not want to distribute the [undistributed] income, in the event that the appeal of the [civil action] between David and Clunies A and Clunies E resulted in a reversal of the trial court decisions. Income was withheld in order to avoid overpaying [Clunies A] from a trust with limited liquidity." Likewise, San Pasqual "did not know if the [trust's] assignment of the [$5.7 million] judgment (to David) would affect the Trust's tax[es]," which would have been paid from income.

Because we disagree with Hanley's arguments, we turn to former section 16347.

## C.  *Former Section 16347, subdivision (b)*

### 1.  *Background*

San Pasqual believes the referee and court misinterpreted former section 16347, subdivision (b). Questions of statutory interpretation are reviewed de novo. (*Wang v. City of Sacramento Police Dept.* (2021) 68 Cal.App.5th 372, 378.) In analyzing the statute, we begin "with the statute's actual words, the 'most reliable indicator' of legislative intent, 'assigning them their usual and ordinary meanings, and construing them in context. If the words themselves are not ambiguous, we presume the Legislature meant

14

what it said, and the statute's plain meaning governs. On the other hand, if the language allows more than one reasonable construction, we may look to such aids as the legislative history of the measure and maxims of statutory construction. In cases of uncertain meaning, we may also consider the consequences of a particular interpretation, including its impact on public policy.'" (*Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 837–838.)

Under former section 16347, subdivision (b), "on the date when a mandatory income interest ends, the trustee shall pay to *a mandatory income beneficiary* who survives that date, or to the estate of a deceased mandatory income beneficiary whose death causes the interest to end, the beneficiary's share of the undistributed income that is not disposed of under the trust."[6] (Italics added.)

San Pasqual's argument is based on the italicized phrase above, "a mandatory income beneficiary." It believes the statute's use of the indefinite article "a" in this phrase is a general reference to *any* mandatory

---

[6] Under former section 16347, subdivision (a)(1), "'undistributed income' mean[t] net income received before the date on which an income interest end[ed]. The term [did] not include an item of income or expense that [was] due or accrued or net income that [had] been added or [was] required to be added to principal by the trust." (Stats. 1999, ch. 145, § 5, operative Jan. 1, 2000.) There is no dispute the undistributed income falls within this statutory definition. Likewise, the former statutory scheme defined "'[m]andatory income interest' to "mean[]the right of an income beneficiary to receive net income that the trust requires the fiduciary to distribute." (Former § 16327, added by Stats. 1999, ch. 145, § 5, operative Jan. 1, 2000.) "'Income beneficiary' mean[t] a person to whom net income of a trust is or may be payable." (Former § 16325, added by Stats. 1999, ch. 145, § 5, operative Jan. 1, 2000.) While these definitions are not material to our analysis, we include them for reference.

income beneficiary. (Citing *Pineda v. Bank of America, N.A.* (2010) 50 Cal.4th 1389, 1396.) Based on this interpretation, San Pasqual claims that "[i]f the trust has at least one mandatory income beneficiary following the death of the deceased income beneficiary, then the undistributed income belongs to the trust and is paid by the trustee to the continuing mandatory income beneficiary or beneficiaries." If there are "no mandatory income beneficiar[ies] following the death of the deceased income beneficiary, then the undistributed income belongs to the estate of the deceased income beneficiary."

Next, San Pasqual cites the court's ruling that Clunies A's "issue" includes the seven grandchildren, meaning each grandchild will each receive income from the trust until he or she turns 35 years old. Based on this ruling, San Pasqual contends that under former section 16347, subdivision (b), each of the seven grandchildren is "a mandatory income beneficiary who survive[d] [the end] date" of Clunies A's mandatory income interest. Thus, San Pasqual maintains the statute requires the undistributed income to remain in the trust so it can be paid to each of these mandatory income beneficiaries.

The creditors disagree with San Pasqual. They interpret the above-discussed phrase "a mandatory income beneficiary" to refer a particular person: the mandatory income beneficiary whose interest has ended. Here, that would be Clunies A. They contend former section 16347, subdivision (b), "looks at the date upon which a particular beneficiary's income interest ends" and "provides for the payment of 'undistributed' income either to that beneficiary or to that beneficiary's estate if her right to the trust's income terminated on her death." As the creditors interpret the statute, "a mandatory income beneficiary" only refers to Clunies A, not the

16

seven grandchildren. As such, the undistributed income should be paid to Clunies A's estate.

The creditors' argument is more persuasive.

### 2. Analysis

The parties' disagreement stems from the statute's use of the indefinite article "a" in the phrase "*a* mandatory income beneficiary who survives [the end] date." (Former § 16347, subd. (b), italics added.) Their competing interpretations are both reasonable. The indefinite article "a" can refer to a particular person or thing, but it can also refer to "any" or "every." As Justice Menetrez recently explained, "when a noun phrase begins with an indefinite article ('a' or 'an'), the phrase might be universal—meaning 'all' or 'any' or 'every'—or it might be particular—meaning 'one' or 'at least one' or 'there is at least one' or 'some.' We routinely rely on context to disambiguate. 'My neighbor bought an electric car' means my neighbor bought *one* (or perhaps at least one) electric car. But 'You do not put gas in an electric car' means you do not put gas in *any* electric car." (*People v. Superior Court (Ortiz)* (2022) 81 Cal.App.5th 851, 912 (dis. opn. of Menetrez, J.).) As such, we must look at the context of former section 16347, subdivision (b) to determine whether "a mandatory income beneficiary" refers to a particular beneficiary or to any beneficiary.

Under former section 16347, subdivision (b), "*when a mandatory income interest ends*, the trustee shall pay to *a mandatory income beneficiary* who survives that date, or to the estate of *a deceased mandatory income beneficiary* whose death causes the interest to end, *the beneficiary's* share of the undistributed income that is not disposed of under the trust." (Italics & underline added.) In addition to the phrase "a mandatory income beneficiary" discussed above, the statute also uses the indefinite article "a" in the phrases

17

(1) "when *a* mandatory income interest ends," and (2) "*a* deceased mandatory income beneficiary." (Former § 16347, subd. (b), italics added.) In both instances, the indefinite article "a" refers to a particular interest or person. The first phrase refers to a particular interest, specifically, the mandatory income interest that has ended which has led to the application of the statute. Likewise, the second phase refers to a particular person: the beneficiary "whose death cause[d] the interest to end." (Former § 16347, subd. (b).)

It is "'generally presumed that when a word is used in a particular sense in one part of a statute, it is intended to have the same meaning if it appears in another part of the same statute.'" (*Delaney v. Baker* (1999) 20 Cal.4th 23, 41.) This presumption is "'at its most vigorous when a term is repeated within a given sentence.'" (*Mississippi ex rel. Hood v. AU Optronics Corp.* (2014) 571 U.S. 161, 171.) We find this presumption instructive. As outlined above, the indefinite article "a" refers to a particular interest in the phrase "*a* mandatory income interest ends" and a particular person in the phrase "*a* deceased mandatory income beneficiary." (Former § 16347, subd. (b), italics added.) Nothing in the statute's text indicates the meaning of "a" changes throughout the sentence. (See *Satele v. Superior Court* (2019) 7 Cal.5th 852, 859.) Thus, the indefinite article "a" should also refer to a particular person in the phrase "the trustee shall pay to *a mandatory income beneficiary* who survives [the end] date" of the mandatory income interest. (Former § 16347, subd. (b), italics added.)

We also find it significant that the definite article "the" is used in the final clause of former section 16347, subdivision (b), which states, "*the* beneficiary's share of the undistributed income that is not disposed of under the trust." (Italics added.) The use of the definite article here most likely

18

occurs because "the beneficiary" in this phrase refers to the same beneficiary referenced in the prior clauses discussed above: the beneficiary whose mandatory income interest has ended or, in this case, Clunies A. (See *Pineda v. Bank of America, N.A.*, *supra*, 50 Cal.4th at p. 1396 ["[U]se of the definite article 'the' . . . refers to a specific person, place, or thing"].)

The above interpretation is also supported by former section 16347, subdivision (c), which contains an exception to subdivision (b): "If immediately before the income interest ends, *the beneficiary under subdivision (b)* has an unqualified power to revoke more than 5 percent of the trust, the undistributed income from the portion of the trust that may be revoked shall be added to principal." (Former § 16347, subd. (c), italics added.) The term "beneficiary" is used three times in subdivision (b), and it is twice preceded by the indefinite article "a": (1) "*a mandatory income beneficiary* who survives that date," (2) "*a deceased mandatory income beneficiary* whose death causes the interest to end," and (3) "*the beneficiary's* share of the undistributed income." (Former § 16347, subd. (b), italics added.) Despite these three mentions, subdivision (c) refers to "*the* beneficiary under subdivision (b)." (Former § 16347, subd. (c), italics added.) The use of the definite article in "*the* beneficiary" here indicates all mentions of "beneficiary" in subdivision (b) refer to a particular person: the beneficiary whose mandatory income interest has ended, i.e.*,* Clunies A. (See *Pineda v. Bank of America, N.A.*, *supra*, 50 Cal.4th at p. 1396.)

Further, in interpreting former section 16347, subdivision (b), it is important to remember that a mandatory income interest can terminate at or before the relevant income beneficiary's death. For example, in this case, David was still alive when his income interest ended in 2010 (five years after the death of his last surviving parent). Conversely, Clunies A's death caused

19

her income interest to end. As we read former section 16347, subdivision (b), it simply directs the trustee whom to pay depending on the mandatory income beneficiary's status when her income interest ends (assuming the trust is silent on the issue). If the beneficiary is still alive when her income interest ends, undistributed income is paid to her. If the beneficiary's death caused her income interest to end, undistributed income is paid to her estate.

Under San Pasqual's interpretation of the statue, a trustee in certain scenarios would seemingly have complete discretion to pay undistributed income to either the remainder income beneficiaries or to the deceased beneficiary's estate. Former section 16437, subdivision (b) instructs the trustee to pay undistributed income "to a mandatory income beneficiary who survives that date, *or* to the estate of a deceased mandatory income beneficiary whose death causes the interest to end." (Italics added.) It provides no order or priority for these options. Thus, under San Pasqual's interpretation, the trustee would appear to have total discretion to pay the undistributed income to either Clunies A's estate or the seven grandchildren. The creditors' interpretation is more reasonable as it removes this discretion and provides a trustee with clear directions.

San Pasqual's interpretation of former section 16347, subdivision (b) would also lead to absurd results. For example, Clunies A's children (Clunies E, Cameron, and James) are trust beneficiaries but not *income* beneficiaries. Since they are all over the age of 35, they will receive their entire share of the trust's principal. The seven grandchildren happen to be income beneficiaries because they are all under the age of 35. Under San Pasqual's reading of the statute, none of the undistributed income would be paid to Clunies E, Cameron, or James because they are not "mandatory income beneficiar[ies]." (See former § 16347, subd. (b).) Rather, by chance, it

20

would only be paid to the seven grandchildren because they were under the age of 35 when Clunies A's income interest ended. This is an illogical result, and we avoid interpreting the statute in a manner that would allow for such a scenario to occur. (*People v. Morales* (2018) 25 Cal.App.5th 502, 509.)

Finally, the Law Revision Commission Comments for former section 16347 (the Comments) indicate the Legislature rejected San Pasqual's interpretation of the statute. The Comments note that former section 16347 is "the same in substance as Section 303 [(Section 303)] of the Uniform Principal and Income Act (1997) [(the Act)]." (Cal. Law Revision Com. com., West's Ann. Prob. Code (2023 ed.) foll. § 16347.) Since former section 16347, subdivision (b) was adopted nearly verbatim from Section 303, we may look to the latter for guidance.[7] (*Kirzhner v. Mercedes-Benz USA, LLC* (2020) 9 Cal.5th 966, 977–978.)

As the Comments explain, the prior version of Section 303 "provide[d] that a deceased income beneficiary's estate is entitled to the undistributed income.[8] The Drafting Committee [of the Act] concluded that

---

[7] The relevant portion of Section 303, subdivision (b) states, "[w]hen a mandatory income interest ends, the trustee shall pay to a mandatory income beneficiary who survives that date, or the estate of a deceased mandatory income beneficiary whose death causes the interest to end, the beneficiary's share of the undistributed income that is not disposed of under the terms of the trust . . . ."

[8] This prior version of section 303 was contained in former section 16304, subdivision (d), added by Statutes 1990, chapter 79, section 14, page 955, operative July 1, 1991. Under, former section 16304, subdivision (d), "[i]f an income beneficiary's right to income terminates by death or in any other manner, income paid to the income beneficiary or received by the trustee before the termination belongs to the income beneficiary or his or her personal representative."

this is probably not what most settlors would want, and that, with respect to undistributed income, most settlors would favor the income beneficiary first, the remainder beneficiaries second, and the income beneficiary's heirs last, if at all. *However, it decided not to eliminate this provision to avoid causing disputes about whether the trustee should have distributed collected cash before the income beneficiary died.*" (Cal. Law Revision Com. com., West's Ann. Prob. Code, *supra*, foll. § 16347, italics added.)

In other words, when drafting Section 303, the Act's drafters considered including a provision directing trustees to pay undistributed income to remainder beneficiaries instead of the deceased beneficiary's estate. But they decided not to do so to avoid disputes as to whether a trustee should have paid undistributed income to the deceased income beneficiary prior to her death. Thus, the drafters of the Act rejected the interpretation advocated by San Pasqual here. Since former section 16347, subdivision (b) is copied almost verbatim from Section 303, we must conclude the Legislature also did not intend for it to be interpreted as San Pasqual now seeks. (See *Kirzhner v. Mercedes-Benz USA, LLC, supra*, 9 Cal.5th at pp. 977–978.)

22

## II.

### THE ATTORNEY'S LIEN

The order states that any claims by the creditors or Hanley against Clunies A must be brought against her estate in the LA estate action. So, we focus on their competing claims against Clunies E's distributions from the trust once they are distributed.

The creditors assert Hanley only had an attorney's lien on recoveries made by Clunies A or Clunies E as individuals, and his attorney's lien did not extend to recoveries made by the trust. Since the $5.7 million judgment against David was in favor of the trust, they claim no attorney's lien attached to it. Next, the creditors point out that even if Hanley had an attorney's lien attached to the $5.7 million judgment, it was assigned to David in 2021 and is no longer trust property. They argue that any distributions paid from the trust to Clunies E come from property that is not subject to Hanley's attorney's lien. Accordingly, Hanley cannot obtain priority to these distributions based on his claimed attorney's lien. We agree with both arguments.

"A lien is a charge imposed upon *specific property*, by which it is made security for the performance of an act." (Code Civ. Proc., § 1180, italics added; Civ. Code, § 2872 ["A lien is a charge imposed in some mode other than by a transfer in trust upon specific property by which it is made security for the performance of an act"].) "An attorney's lien is '"an equitable right to have the fees and costs due to him for services in a suit secured to him out of the judgment or recovery in the particular action . . . ."'" (*Epstein v. Abrams* (1997) 57 Cal.App.4th 1159, 1169.) "In California, an attorney's lien is created only by contract—either by an express provision in the attorney fee contract [citations] or by implication where the retainer agreement provides

23

that the attorney is to look to the judgment for payment for legal services rendered [citations]." (*Carroll v. Interstate Brands Corp.* (2002) 99 Cal.App.4th 1168, 1172.) Generally, "[t]he terms of the fee agreement determine the scope of the lien." (Tuft et al., Cal. Practice Guide: Professional Responsibility & Liability (The Rutter Group 2024 ¶ 5:770.)

Here, the attorney-client agreement (the agreement) between Hanley and Clunies A and Clunies E contains a lien provision. It states, "Client [(Clunies E and Clunies A)] hereby grants Attorney [(Hanley)] a lien on any and all claims or causes of action that are the subject of Attorney's representation under this Agreement. Attorney's lien will be for any sums owing to Attorney for any unpaid costs or attorneys' fees under this Agreement. *The lien will attach to any recovery Client may obtain*, whether by arbitration award, judgment, settlement or otherwise." (Italics added.) Hanley's representation under the agreement covered the civil action and this probate case.

Notably, Hanley did not represent the trust. His clients were Clunies A and Clunies E, who signed the agreement as individuals. Likewise, the complaint filed in the civil action states it was brought by Clunies A and Clunies E as individuals. Per the terms of the agreement, Hanley's attorney's lien only attached to a recovery made by his clients, who were Clunies A and Clunies E in their *individual capacities*. Neither obtained a recovery in the civil action. The $5.7 million judgment against David was in favor of the trust. Nor are we aware of any recovery made by Clunies A or Clunies E in this probate case. As such, there has been no recovery made by either Clunies A or Clunies E to which Hanley's attorney's lien could attach.

Hanley argues Clunies A and Clunies E had a vested interest in the $5.7 million judgment because they were beneficiaries of the trust, which

24

was irrevocable. (Citing *Empire Properties v. County of Los Angeles* (1996) 44 Cal.App.4th 781, 787.) But even if they had a vested *beneficial* interest, they had no authority to encumber undistributed trust assets like the $5.7 million judgment. A trust beneficiary has "no legal title or ownership interest in the trust assets." (*Wolf v. Mitchell, Silberberg & Knupp* (1999) 76 Cal.App.4th 1030, 1036.) A beneficiary does "not possess or control the trust corpus" and has "no substantial ownership rights in the trust corpus itself." (*Hoffman v. Connell* (1999) 73 Cal.App.4th 1194, 1201.) Rather, "[l]egal title to property owned by a trust is held by the trustee, and common law viewed the trustee as the owner of the trust's property." (*Galdjie v. Darwish* (2003) 113 Cal.App.4th 1331, 1343.) Since beneficiaries only hold equitable title, they generally have no power to convey ownership interests of trust property. (See *Walgren v. Dolan* (1990) 226 Cal.App.3d 572, 576.)

Further, Article IX of the trust contains a spendthrift provision. It states, "[t]he interest of any beneficiary in the principal or income of this Trust shall not be subject to claims of his or her creditor, or others, or liable to attachment, execution or other process of law*,* and no beneficiary shall have any right to encumber; hypothecate or alienate his or her interest in this Trust in any manner." Even if Clunies A and Clunies E had a vested beneficial interest in the $5.7 million judgment, the spendthrift provision prevented them from encumbering it with an attorney's lien before it was distributed. (See *Frazier v. Wasserman* (1968) 263 Cal.App.2d 120, 127 ["[T]he assignment of the corpus of a spendthrift trust during the life of the trust is ineffectual to convey any interest in the trust corpus to the assignees"].)

Besides, even if Hanley had an attorney's lien attached to the $5.7 million judgment, the judgment was assigned by the trust to David "*free*

25

*and clear*" of the lien in 2021. The trust no longer holds the judgment that would be subject to Hanley's attorney's lien. And Hanley's purported attorney's lien on the $5.7 million judgment does not extend to any other trust property that will be distributed to Clunies E. (See Code Civ. Proc., § 1180 [a lien attaches to specific property].) Thus, Hanley does not have an attorney's lien on any trust assets that would allow him to gain priority over the creditors as to Clunies E's disbursements.

In response, Hanley cites *Novak v. Fay* (2015) 236 Cal.App.4th 329, 337, for the proposition that a lien may embrace an asset not yet in existence. But that is not the issue we face. Here, there was never a recovery made by Clunies A or Clunies E. The $5.7 million judgment was in the trust's favor, and it was later assigned by the trust to David. Thus, even if Hanley had a valid attorney's lien on the $5.7 million judgment, it no longer belongs to the trust. Nor have we been cited any evidence showing Hanley has a lien on any other trust property.

Hanley also argues that the creditors did not raise these issues below. Not so. In addressing lien priority, the creditors' trial brief argued their judgments had priority over Hanley's purported attorney's lien because Hanley represented Clunies A and Clunies E individually, and "[n]either Clunies A nor Clunies E prevailed individually in the civil action." Further, even if Hanley's argument were accurate, we have discretion to address the creditors' arguments because "'the facts are not disputed and [their arguments] merely raise[] . . . new question[s] of law.'" (*Estate of Layton* (1996) 44 Cal.App.4th 1337, 1339–1340, fn.4.)

To clarify, our ruling does not mean the creditors' claims against Clunies E's distributions automatically have priority over Hanley's claim. We only find that Hanley does not currently have an attorney's lien against any

26

of the trust's assets that would give him priority as to these distributions. Thus, the probate court erred by giving Hanley's claim priority by virtue of an attorney's lien. However, there may be other grounds for granting his claim priority that were not raised in this appeal. On remand, the probate court shall address any other arguments by Hanley and/or the creditors concerning the priority of their respective claims to Clunies E's trust distributions.

## DISPOSITION

The order is affirmed in part and reversed in part. We reverse the part of the order granting Hanley's claim priority over the creditors' claims as to Clunies E's trust distributions. On remand, the probate court shall determine the proper priority of these competing claims. The remainder of the order is affirmed.

The creditors are entitled to their costs on this appeal and cross-appeal from both San Pasqual and Hanley.


MOORE, ACTING P. J.

WE CONCUR:


SANCHEZ, J.


SCOTT, J.